220 So.2d 325 (1969)
Alberta WILLIAMS
v.
STATE of Mississippi.
No. 45336.
Supreme Court of Mississippi.
March 17, 1969.
*326 Martha M. Wood, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Laurence Y. Mellen, Sp. Asst. Atty. Gen., Jackson, for appellee.
JONES, Justice:
Appellant was indicted for murder, tried in the Second Judicial District of Panola County, convicted of manslaughter, and sentenced to serve two years in the state penitentiary; with the last year thereof being suspended, pending good behavior. For the reasons hereinafter stated, we reverse and remand for another trial.
The appellant attacks the grand jury and the trial venire, alleging the following grounds:
(a) discrimination between the races in the selection of the jury.
(b) our statute unconstitutionally excludes women from jury service.
(c) the statutory standards for selection of juries are impermissibly vague.
(d) statutory standards were not followed by the Board of Supervisors in composing the jury lists.

(a) Discrimination.

The Second Judicial District of Panola County is composed of a part of District 3, and all of Districts 4 and 5. Appellant concedes that District 3 had not systematically excluded Negroes, so this issue is left only as to Districts 4 and 5. The Federal census for 1960 was introduced, showing that in District 4 there were 1639 Whites and 1139 Negroes; and that in District 5 there were 5584 Whites and 5861 Negroes. The Federal census includes no information as to those of either race who were disqualified under the jury laws.
The jury lists for 1965, 1966, and 1967 were introduced, and after having the supervisors, the present circuit clerk, and a former circuit clerk, examine the lists, the following figures were determined for District 4, as shown by appellant's brief:

 TOTAL NAMES
 YEAR ON LIST WHITE NEGRO UNKNOWN
 1965 155 102 10 43
 1966 102 56 12 34
 1967 134 67 22 45
 TOTALS 391 225 44 122

Appellant's brief also discloses the following tabulations for District 5.

 TOTAL NAMES
 YEAR ON LIST WHITE NEGRO UNKNOWN
 1965 137 127 0 10
 1966 155 106 27 22
 1967 104 77 12 15
 TOTALS 396 310 39 47

*327 There was evidence introduced, that since the year 1960, numerous members of the Negro race had left Panola County. It was shown that those who were unknown could be either all Negroes or all Whites. There was testimony from the supervisors that there was no discrimination in their selections, and some testified that they went down the list and selected, as an illustration, every tenth person.
The very fact that the supervisors could not identify the number of people shown in the above tabulations as "unknown", is convincing proof that there was no effort on their part to purposely or wilfully exclude or discriminate against Negroes. The probabilities are that there were many more who were unknown to the supervisors; because the total reached was after other officers checked the lists, to-wit: The present circuit clerk (in office slightly over four years) and the preceding clerk (in office thirty-two years).
The proof showed that Negroes had been serving on the jury; that there were five or six Negroes on a jury in one case at the last term of court; that there were Negroes on the regular panel at this term of court, and Negroes on the special venire; and that there were Negroes on the grand jury at this term of court.
The tabulations themselves show that Negroes are being used on the lists.
We think the lower court was correct in overruling the motion to quash the grand jury and the trial venire. In Swain v. Alabama, 380 U.S. 202, 209, 85 S.Ct. 824, 830, 13 L.Ed.2d 759, 766 (1965), it was stated:
The overall percentage disparity has been small, and reflects no studied attempt to include or exclude a specified number of Negroes. Undoubtedly the selection of prospective jurors was somewhat haphazard and little effort was made to ensure that all groups in the community were fully represented. But an imperfect system is not equivalent to purposeful discrimination based on race.
As a footnote to the last sentence above quoted, this statement is copied from Thomas v. Texas, 212 U.S. 278, 283, 29 S.Ct. 393, 394, 53 L.Ed. 512, 514 (1909):
It may be that the jury commissioners did not give the negro race a full pro rata with the white race in the selection of the grand and petit jurors in this case; still this would not be evidence of discrimination. If they fairly and honestly endeavored to discharge their duty, and did not in fact discriminate against the negro race in the selection of the jury lists, then the Constitution of the United States has not been violated.

(b) Exclusion of women.

This question should not be in the subsequent trial. Amis v. State, 204 So.2d 848 (Miss. 1967); Harris v. State, 206 So.2d 829 (Miss. 1966). Our Legislature, at the last session, amended the jury statute so as to include women. House Bill No. 895, Regular Legislative Session 1968.

(c) Statutes vague.

See Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1963) and Reed v. State, 199 So.2d 803 (Miss. 1967).

(d) Standards not followed.

Our laws as to listing, drawing, summoning, and empaneling juries are directory only. Miss.Code 1942 Ann. § 1798 (1956). A venire will not be quashed except for fraud or a total departure from the statutes.
The first issue (the admission of statements by defendant) is the serious one that requires reversal.
Earl Hubbard, Sheriff of Panola County, was called to the hospital immediately after the shooting. Louis Clark, who had been shot, was dead when the sheriff arrived.
The court held a preliminary hearing to determine the admissibility of certain statements by appellant, alleged to have been *328 made to the sheriff on the night of the shooting. Out of the presence of the jury, the sheriff testified that he carried appellant from the hospital to her house. His deputy, Jack Gregg, and a woman named Avant, were also in the car. He testified in detail concerning the advice or warnings he gave her. When they reached the house, appellant told him that she didn't mind talking to them, and told what happened. She first told him in the car on the way home that she didn't know who shot the deceased. When they went into the house, she showed him where the deceased was, and then where she was. He stated, "You should know who shot him." She kept saying that she didn't know. Finally, she just picked up this old gun and said to him, "Louis Clark said that old gun wouldn't shoot; put it away." She said that she pulled the trigger and the gun went off.
The State rested on the motion, and Edda Avant testified she went from the hospital to appellant's house in the car of one Fondren, and the appellant was in the car with them. The sheriff was behind them.
Randall Fondren was the next witness for the defendant. He testified that after the doctor reported Clark was dead, he went back to appellant's house, and appellant and Edda Avant went with him in his car. The sheriff trailed all the way in his car. There was another man in the sheriff's car with him. The appellant's testimony was in line with that of Avant and Fondren and denied making any of the statements mentioned as having been made in the car or in the house.
Both sides rested, and appellant renewed the motion to suppress the admissions claimed by the sheriff to have been made to him. The court overruled the appellant's motion. We are compelled to disagree with this ruling of the court for two reasons:
(1) It is not clearly shown that the warnings required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), were given.
(2) The sheriff's evidence, if sufficient to comply with Miranda, made only a prima facie case. When the defendant's evidence disputed the sheriff's, it became incumbent upon the State to introduce whatever other officers were present, to show the competency of such admissions. The sheriff stated that his deputy was with him in the car, but did not introduce him as a witness. The unexplained fact that he was not offered as a witness, prevents the sheriff's testimony from fulfilling the State's burden of proof. Agee v. State, 185 So.2d 671 (Miss. 1966); Lee v. State, 236 Miss. 716, 112 So.2d 254 (1959); Holmes v. State, 211 Miss. 436, 51 So.2d 755 (1951).
The trial judge in the lower court stated that he considered this a weak case. With this conclusion, we agree, but reverse and remand it for a new trial because of the error stated.
Reversed and remanded for a new trial.
GILLESPIE, P.J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.