In October 1967 the Grand Jury of Amite County returned an indictment charging Leroy Alexander and Simmie Morris, appellants, with theft of a cow under Mississippi Code 1942 Annotated section 2240 (1956). Both appellants entered pleas of not guilty. The trial of Morris, who obtained a severance, commenced on February 22, 1968. After Morris began testifying in his own defense, he and, a few moments later, Alexander purported to withdraw their not guilty pleas and enter pleas of guilty. Thereafter, appellants secured new counsel and took appeals to this Court, but later by motion obtained their dismissal, since an appeal may not be taken from a sentence based on a plea of guilty. Miss. Code 1942 Ann. § 1150 (1956).
Alexander and Morris subsequently filed the present motions in the Circuit Court of Amite County to vacate their convictions and sentences on the grounds that (1) they did not voluntarily and understandingly enter guilty pleas, and (2) Negroes were systematically excluded from the grand jury and from the petit jury which would have decided their cases if they had been tried on pleas of not guilty. The motions to vacate were consolidated for hearing and the circuit court overruled them. We hold that the record of the arraignment proceeding for Morris shows neither that he personally pleaded guilty to the felony, nor that he voluntarily and understandingly did so; and further, that the record does not affirmatively reflect that Alexander voluntarily and understandingly pleaded guilty. Hence, the order of the circuit court is reversed, both pleas of guilty are set aside, and the cause remanded for further proceedings on the indictment.
 SELECTION OF JURIES
Since both cases may be retried on the present indictment, appellants' proposition that there was systematic exclusion of Negroes from the grand jury should be disposed of at this point. Evidence on this issue was presented and considered at the hearing on the motions to vacate. Appellants were indicted for grand larceny in April 1967. The State concedes that up to 1966 there had been systematic and discriminatory exclusion of Negroes from jury service in Amite County. However, the record reflects that beginning in 1966 and particularly in 1967 the method of jury selection was changed so as to eliminate any discriminatory jury-selection procedures and that in 1967 Amite County was administering a nondiscriminatory jury-selection system.
The master jury list of April 1967 was drawn from the voter registration and land assessment rolls. The population of Amite County is approximately fifty percent white and fifty percent black. However, only about one-half as many Negroes as whites are registered to vote in Amite County. The percentage of Negroes on the 1966 jury list was 28.3%, and was 32% on the 1967 list from which the grand jury in this case was drawn. This indicates that a higher percentage of Negro qualified electors was selected for jury service both in 1966 and 1967 than white electors. The Board of Supervisors of Amite County, in selecting names to be placed on the jury list, took every fourth name. The disparity as to total population is wholly insufficient to make a prima facie case of systematic exclusion or inclusion. In short, beginning in 1966 the method of jury selection in Amite County was entirely changed from the prior system and a new method of nondiscriminatory selection was adopted. We *Page 907 
find no constitutional infirmity in it. See Rouse v. State,222 So.2d 145 (Miss. 1969); Williams v. State, 220 So.2d 325 (Miss. 1969); Morris v. State, 206 So.2d 832 (Miss. 1968); McLelland v. State, 204 So.2d 158 (Miss. 1967).
 MORRIS' GUILTY PLEA
Morris had gone to school only a few days in his life, and could neither read nor write. After a severance, the State put on its testimony, and Morris, represented by Attorney Stratton, began to testify, during which he admitted that he along with Alexander had taken the cow from a common pasture containing 200 cattle, ten of which belonged to Alexander. They thought it was Alexander's cow. Prior to the entry of the guilty plea, there transpired a colloquy between the court and the attorney, Stratton, representing Morris. Excerpts from this are quoted in an appendix to this opinion. However, in substance, the defendant Morris never personally pleaded guilty to the indictment.
At the hearing on the motion to vacate, Morris testified that he was not guilty of stealing the cow — he thought it belonged to Alexander. His attorney, an able member of the bar, told him that he should plead guilty, that he could probably get a lighter sentence. Stratton testified that the reason he recommended that Morris plead guilty was because Morris during the trial admitted privately to him that he had stolen the cow. At any rate, that which transpired at the time the plea of guilty was entered, in the context of this record, shows that the court's interrogation, although directed to Morris, was answered solely by his counsel, and that Morris never personally pleaded guilty to the indictment.
Although an accused may plead to a misdemeanor by his attorney, under an indictment for a felony he cannot plead by attorney. He must plead in person. Mississippi Code 1942 Annotated section 2504 (1956) states:
 If the defendant, on arraignment, refuse or neglect to plead, or stand mute, the court must cause the plea of "not guilty" to be entered, and the trial to proceed.
Mississippi Code 1942 Annotated section 2564 provides:
 A person indicted for a criminal offense shall not be convicted thereof, unless by confession of his guilt in open court or by admitting the truth of the charge against him by his plea, or by the verdict of a jury accepted and recorded in court; and a person charged with an offense shall not be punished therefor unless legally convicted thereof in a court having jurisdiction of the cause and of the person.
These statutes have consistently been interpreted as requiring that one charged with a felony must plead to an indictment in person. If he refuses to plead, the court is required to enter for him a plea of not guilty. Wilson v. State, 42 Miss. 639
(1869); McQuillen v. State, 8 Smedes Marshall 587, 16 Miss. 587
(1847); cf. Bogle v. State, 155 Miss. 612, 125 So. 99 (1929);see 21 Am.Jur.2d Criminal Law § 459 (1965). Since Morris did not plead to the felony indictment personally, his plea of guilty by his attorney was invalid. Furthermore, the evidence reflects that even if the plea by attorney were valid, it was not made intelligently and understandingly.
 ALEXANDER'S GUILTY PLEA
Alexander, 33 years of age, had gone through the ninth grade in school and could read and write "some." He had no prior convictions. Apparently he appeared before the court, withdrew his plea of not guilty and pleaded guilty shortly after Morris had withdrawn his not guilty plea and pleaded guilty. There is no transcript of what occurred or what was said at the time. The minutes reflect only the usual formal action:
 This day came the State of Mississippi by her District Attorney and the accused, *Page 908 
Leroy Alexander, represented by his attorney, Hon. F.W. Stratton, and being placed at the bar of this Court in the custody of the Sheriff of this County, having been arraigned at a former term of this Court and having entered a plea of "NOT GUILTY" of Grand Larceny, asks leave of this Court to withdraw his former plea of "Not Guilty" of Grand Larceny and upon leave being granted by the Court the defendant, Leroy Alexander entered a plea of "Guilty" to the said charge of "Grand Larceny" and was remanded to the custody of the Sheriff for sentence thereupon at a later day of the term.
Alexander owned ten cows located in a pasture which also contained a number of other cattle belonging to several different people. At the hearing on the motion to vacate, he testified that he removed the cow, but he thought it belonged to him. (His employer later testified that the cow was identical with some of Alexander's cattle.) Attorney Stratton said that he explained to Alexander the possible maximum sentence, but told him his plea was a decision he alone would have to make. He stated that shortly before both defendants pleaded guilty, they admitted that they knew it was not Alexander's cow. Stratton said that, before permitting withdrawal of the not guilty plea and accepting the guilty plea, the court had conducted a "short examination" of the defendants, and he "believed" they pleaded individually. In short, it cannot be determined affirmatively from this record what occurred at the hearing when Alexander withdrew his plea of not guilty and entered a plea of guilty. There is no transcript of any questioning of Alexander by the judge.
In several cases this Court has placed the affirmative duty upon the state to show an intelligent and competent waiver of counsel. Conn v. State, 251 Miss. 488, 170 So.2d 20 (1964), involved conviction of a felony after a jury trial. It was there stated that "it was not shown that he (appellant) waived the appointment of counsel. The case requires that such a waiver, if any, be understandably made." Citing several decisions of the United States Supreme Court, this Court concluded:
 In accordance with these mandatory decisions we hold that there must be an intelligent and competent waiver of counsel by the defendant and that the trial court should so determine, and, further, that such determination, as well as the facts on which it is based, should appear in the record. (251 Miss. at 495, 170 So.2d at 23).
In Clarke v. State, 251 Miss. 627, 170 So.2d 575 (1965), defendant was convicted of a felony. He was tried without an attorney representing him. Subsequently, an attorney acting for defendant filed a motion for a new trial, which was denied by the circuit court. On appeal the motion was sustained, and the Court held:
 The proceedings in the instant case do not comply with the foregoing requirements. As there stated, the trial court has the responsibility to determine affirmatively, and the record should reflect the pertinent facts on these issues. The court should advise the accused of his right to the assistance of counsel, should ascertain whether he is indigent, and should determine by inquiries reflected in the record whether there is an intelligent and competent waiver of counsel by the defendant. (251 Miss. at 630, 170 So.2d at 576).
To the same effect is Bruno v. Cook, Superintendent of State Penitentiary, 224 So.2d 567 (Miss. 1969); see 21 Am.Jur.2d, Criminal Law § 461 (1965).
These cases established in this jurisdiction a requirement that before a defendant can be tried for a felony without counsel, there must be an intelligent and competent waiver, and that this must be evidenced affirmatively by a record or transcript of the trial judge's interrogation of the defendant, precedent to his determination that there was a voluntary and intelligent waiver of *Page 909 
counsel. Of equal importance, in a crucial stage of a criminal proceeding, is the decision of an accused to plead guilty to a felony charge. The trial court should not accept a guilty plea or a change from a not guilty to a guilty plea without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. A transcript or record of that proceeding is essential. However, this does not preclude other types of clear and convincing evidence which shows that accused voluntarily and understandingly elected to plead guilty. Anything else is insufficient to establish waiver. In short, a record should be made of what transpires at the pleading stage, which is sufficient to support the acceptance by the trial court of the guilty plea and to reflect that it was made voluntarily and understandingly by the defendant.
Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), has recently made these standards a federal constitutional right required of the states under the due process clause of the Fourteenth Amendment. Boykin pleaded guilty to common-law robbery, and after a jury trial on penalty he was sentenced to death. The Albama Supreme Court affirmed, with three judges dissenting on the ground that the record was inadequate to show that the defendant had intelligently and knowingly pleaded guilty. The United States Supreme Court reversed the judgment and held:
 It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary. * * * The requirements that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, 77, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."
 We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. * * *
 Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. * * * Second is the right to trial by jury. * * * Third, is the right to confront one's accusers. * * We cannot presume a waiver of these three important federal rights from a silent record.
 What is at stake for an accused facing death or imprisonment demands utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought. (395 U.S. at 242-244, 89 S.Ct. at 1711-1712, 23 L.Ed.2d at 279-280.)
Since as to Alexander the State made no affirmative showing, spread on the record, of the prerequisites of a valid waiver, namely, that appellant voluntarily, intelligently, and understandingly waived his constitutional rights and changed his plea of not guilty to guilty, we reverse the *Page 910 
judgment of the circuit court overruling the motion to vacate Alexander's conviction, and render judgment here vacating his plea of guilty and sentence. Our judgment will make a similar adjudication as to Morris.
Reversed, pleas of guilty and sentences vacated, and cause remanded for further proceedings under the indictment.
RODGERS, JONES, BRADY and INZER, JJ., concur.
 APPENDIX Excerpt — Simmie Morris, et al
BY MR. STRATTON:
Q. Now, Simmie, tell us again what you have just said.
A. I ask you all to please be as light on me as you all can. It's just a mistake I made. You all be as light on me as you could. I ain't never in my life been into it fooling with people no more than that is my first time and I ask you all to please be as light on me as you all can. I do all I can for anybody any time of the day or night, and they ain't had no trouble out of me like that, so I ask the Court to have mercy on me.
Q. You took the cow?
A. Yes, sir. We got the cow. I didn't know it was her'n when we got it.
 * * * * * *
BY THE COURT:
Do I understand that you want to withdraw your plea of not guilty and enter a plea of guilty?
BY MR. STRATTON:
Yes, sir. Or the Jury can pass on it.
BY MR. FORMAN:
I want him to state to this Court if he is withdrawing his plea of not guilty and entering a plea of guilty and asking the mercy of the Court, is that right?
BY MR. STRATTON:
That's right.
BY MR. FORMAN:
Well, I submit that it's not a question for the Jury.
BY THE COURT:
Have you explained this to him, does he know what he wants to do?
BY MR. STRATTON:
We ask that you put sentencing off, may it please the Court, until he collects himself.
BY THE COURT:
Do I understand now, Simmie, that you want to change your plea from not guilty to guilty of this charge? Does he understand that?
BY MR. STRATTON:
Yes, sir, he understands. He asks for the mercy of the Court. There was a recovery and his age.
A. I ain't never been in nothing like this before in my life.
BY THE COURT:
Is that satisfactory with the State?
BY MR. FORMAN:
Your Honor, the State's position is this, if he had withdrawn his plea of not guilty and leaving it up to the Court to sentence this man, and discharging this Jury, that's the point I want cleared up.
BY MR. STRATTON:
Yes, sir. *Page 911 
BY THE COURT:
All right, Simmie, we'll accept your plea then, of guilty to the charge of grand larceny, and let you withdraw your plea of not guilty, and you will be held for sentence at a later date.
BY MR. STRATTON:
Yes, sir.