285 So.2d 172 (1973)
Tommy Lee TAYLOR
v.
STATE of Mississippi.
No. 47481.
Supreme Court of Mississippi.
November 5, 1973.
*173 W.E. Bearden, Jr., Columbus, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Sp. Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
Tommy Lee Taylor was indicted by the Grand Jury of Lowndes County, Mississippi in December, 1964, on one charge of rape and two charges of attempted rape. When it developed that he was an indigent, the trial judge immediately appointed an attorney to represent the defendant. The appointed attorney talked with the prisoner in the presence of the sheriff and the court reporter to ascertain how the prisoner intended to plead. The prisoner's statements were recorded by the court reporter. The prisoner was advised by the attorney as to his rights. The prisoner insisted that he was guilty and desired to plead guilty. The appellant was then arraigned and entered a plea of guilty to each charge. The trial court sentenced the defendant to two (2) consecutive life sentences and a consecutive ten-year sentence in the Mississippi State Penitentiary on the ninth day of December, 1964. The appellant was incarcerated in the penitentiary.
On September 6, 1972, Tommy Lee Taylor filed a petition for a writ of error coram nobis in the trial court in each case. The petitions were consolidated for trial. He alleged that he had been denied due process of law in that he was unlawfully arrested; that he was not advised of his constitutional rights, nor his right to have an attorney; that the attorney appointed for him was incompetent and had no interest in his case; that he was a layman and did not understand the nature of the charges against him; and that there was no damage to the person supposed to have been raped "therefore there was no crime committed; that there must be definite evidence that a crime was committed and the evidence must identify the person who committed the crime."
Upon the hearing on the post-conviction remedy applications, the testimony is more than ample to show that the confession of the appellant was freely and voluntarily given, after having been repeatedly advised by his attorney of his right to have an attorney and his right to remain silent.
The paramount issue here is whether or not the petitioner should be granted a new trial because he testified on the coram nobis hearing that he did not understand the consequence of his guilty plea, and that the trial judge did not inquire of him at the time he pled guilty as to whether or not he understood that he would be sentenced to the penitentiary if he pleaded guilty. Since the trial, the judge who sentenced the petitioner has died. This statement of the petitioner could not be refuted except by other testimony. The state attempted, therefore, to show that the petitioner did know his constitutional rights and did understand the consequence of his guilty plea before he was arraigned. The district attorney offered a statement that petitioner made to his attorney in the presence of the sheriff before he was arraigned. This statement shows that the petitioner knew the consequences of his act. He freely admitted his guilt and told his court-appointed lawyer that he wanted to plead guilty, realizing that he would likely be sentenced to the penitentiary for life. There can be little question that appellant knew the consequences of his plea of guilty as was shown by his statement to his attorney.
The appellant, however, contends that this statement to his attorney was not admissible in evidence, therefore, it is argued that his testimony on the coram nobis hearing must be accepted as true. Moreover, *174 it is said in any event that the judge did not warn him and explain the consequence of his guilty plea in open court.
The appellant cites Caves v. State, 244 Miss. 853, 147 So.2d 632 (1962) and Bullock v. Harpole, 233 Miss. 486, 102 So.2d 687 (1958) for the proposition that the burden is upon the state to show that the trial judge conducted an inquiry to determine whether or not the guilty plea was knowingly and voluntarily made.
In Caves the defendant made a motion at the same term of court where he had previously pleaded guilty, in which he asked the court to permit him to withdraw his guilty plea and to permit him to plead not guilty upon the ground that he did not understand the consequence of his plea. The testimony showed that the defendant was a borderline mental case. We held that the court should have permitted the defendant to enter a plea of not guilty. We said that it was the duty of the court to determine if the defendant desired an attorney and to advise him as to his right to have an attorney. We also said that when a guilty plea was tendered, the judge before accepting the plea, should have (1) determined that the accused was competent to understand the nature and consequence of his plea; (2) advised the accused of his basic rights; and (3) ascertained that the plea was voluntary. The Caves case was decided December 10, 1962. The circuit clerk testified that, in 1964, it was not customary to ask the accused any questions before a plea of guilty was accepted.
In 1969 this court had before it the case of Alexander v. State, 226 So.2d 905 (Miss. 1969) in which two defendants were charged with grand larceny. Both defendants entered pleas of not guilty, but later, one entered a plea of guilty, through an attorney. The other defendant pleaded guilty himself. No record was made of the proceedings. The defendants moved the court to set aside the court's sentence. When the motion was overruled, they appealed to this court. We held: (1) One cannot plead guilty through an attorney for a felony charge; (2) There is an affirmative duty of the state to show that defendant had an intelligent and comprehensive understanding of the nature and consequence of the plea of guilty and that he voluntarily pleaded guilty. We said that it was the duty of the trial judge to address the accused personally so as to determine that the plea was voluntarily made. We also pointed out that:
"A transcript or record of that proceeding is essential. However, this does not preclude other types of clear and convincing evidence which shows that accused voluntarily and understandingly elected to plead guilty. Anything else is insufficient to establish waiver. In short, a record should be made of what transpires at the pleading stage, which is sufficient to support the acceptance by the trial court of the guilty plea and to reflect that it was made voluntarily and understandingly by the defendant." 226 So.2d at 909.
We discussed in Alexander the holding of the United States Supreme Court in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In Boykin a defendant pleading guilty to robbery was sentenced to death. The Alabama Supreme Court, by a majority vote, affirmed the judgment of the trial court. The United States Supreme Court said:
"`It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary. * * * The requirements that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, 77, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: "`"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation *175 and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."'"
We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. * * *'" 226 So.2d at 909.
In Alexander we held that since the state had "made no affirmative showing, spread on the record, of the prerequisites of a valid waiver, namely, that appellant voluntarily, intelligently, and understandingly waived his constitutional rights and changed his plea of not guilty to guilty, we reverse the judgment of the circuit court overruling the motion to vacate Alexander's conviction, * * *." 226 So.2d at 909-910.
Are these two cases, decided in 1969, retroactive so as to be decisive as a matter of law of a 1964 plea of guilty?
In the case of Bullock v. Harpole, 233 Miss. 486, 102 So.2d 687 (1958), the issue was raised that the judge did not advise the prisoner before he accepted the prisoner's plea of guilty as to his rights and did not determine that his guilty plea was voluntarily and intelligently made. This court had the following to say in answer to the argument that the record was silent as to this procedure and determination:
"In answer to that contention, we say that it was the duty of the Circuit Court of George County, before accepting the appellant's plea of guilty in this case, to determine that the applicant entered the plea of guilty freely and voluntarily, and that he was competent to know and understand the consequences of his act. But we have no statute which requires that the judgment of the court contain a finding that these rules of procedure have been complied with before such plea of guilty can be accepted and final judgment entered thereon. The judgment itself raises a presumption that what ought to have been done by the trial judge with respect to receiving such plea was done; and, in the absence of any showing to the contrary, we must assume that the trial judge saw to it that the plea was voluntary, and that the defendant fully realized, and was competent to know the consequences of such plea. State v. Hill, 81 W. Va. 676, 95 S.E. 21, 6 A.L.R. 687." 233 Miss. at 495, 102 So.2d at 690.
We dealt with this issue in the case of Carlton v. State, 254 So.2d 770 (Miss. 1971) in 1971. In that case the petitioner Carlton sought a new trial by filing a petition for a writ of error coram nobis. He alleged in his petition that he pleaded guilty to a charge of grand larceny and was sentenced to the penitentiary in 1968, but his sentence was suspended. He was placed on probation for a period of five (5) years. He violated the conditions of his parole resulting in the revocation of his former suspended sentence. On appeal to this court he insisted that the record failed to show that the petitioner was advised by the court as to the gravity of the charge against him and for that reason the rule in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) was applicable.
However, in Carlton, the judgment entered by the trial judge recited that the prisoner was advised of his constitutional rights and the consequence of his plea; moreover, the former trial judge was introduced as a witness and testified that he advised the prisoner as to the consequence of his plea. We held that the facts in Carlton were distinguishable from the facts in Boykin v. Alabama, supra; but, in addition, we had the following to say:
"In the second place, if the facts in the Boykin case, supra, were similar to the facts in the instant case, it would nevertheless *176 be inapplicable to the present case, because the rule in Boykin, supra, is not retroactive. Boykin, supra, only applies to pleas taken after June 2, 1969, the date of that decision. The plea of guilty in the instant case was made on February 5, 1969. [Citing many cases]." 254 So.2d at 772.
It is apparent that on December 6, 1964, at the time the appellant entered his plea, the rule in Mississippi required the judge to advise the prisoner of his rights and to determine whether or not his plea was voluntary and to determine whether or not the prisoner understood the consequence of his plea [Caves v. State, 244 Miss. 853, 147 So.2d 632 (1962)]. It was also the rule at that time, that in the absence of evidence to the contrary, it would be presumed that the judge performed this duty. [Bullock v. Harpole, 233 Miss. 486, 102 So.2d 687 (1958)].
We are of the opinion that Alexander and Carlton were not retroactive, so as to require a record to have been made of the judge's statement to the prisoner in 1964, if there is sufficient evidence to show that the prisoner knew and understood the consequence of his guilty plea.
In the instant case the appellant testified, as was alleged in his petition, that the judge made no inquiry as to whether or not he understood the nature and consequence of his plea. In rebuttal, the state offered a statement made by the appellant to his attorney, which refutes the claim of the appellant that he was not advised and did not know the consequence of his plea of guilty. This statement indicates that his attorney had previously talked to the prisoner and was aware of his intention to enter a guilty plea.
We think that the statement introduced by the testimony of the court reporter was competent to show that the prisoner was in fact aware of his constitutional rights and that he understood the consequences of his plea. Statements made by persons to their attorneys in the presence of others are not privileged under the attorney-client rule.
Professor Wigmore has this to say on this subject:
"One of the circumstances by which it is commonly apparent that the communication is not confidential is the presence of a third person, who is not the agent of either client or attorney. Here, even if we might predicate a desire for confidence by the client, the policy of the privilege would still not protect him, because it goes no further than is necessary to secure the client's subjective freedom of consultation. (§ 2291, supra)." 7 Wigmore on Evidence, § 2311, at 601-603 (1961).
This general rule was approved by this court in Nebham v. Monsour, 162 Miss. 418, 139 So. 166, 878 (1932).
We held in Carlton, supra, that Boykin was not retroactive and we cited several state and federal cases to that effect.
The United States Supreme Court has not spoken on this issue since Boykin, but the United States Court of Appeals for the Fifth Circuit addressed itself to this issue in the case of Walker v. Caldwell, rendered April 3, 1973, 476 F.2d 213. In that case a state prisoner appealed an adverse decision on his petition for habeas corpus. The petition was based upon the proposition that no record was made at the time he pled guilty. The Fifth Circuit Court of Appeals sustained the district court in its decision recorded in Walker v. Caldwell, 335 F. Supp. 308 (M.D.Ga. 1971). The district court held:
"... [I]n situations where the question of the voluntariness of a guilty plea is raised in a habeas corpus action the court is authorized and should either hold an evidentiary hearing to establish a record whereby it can be determined that a plea of guilty was freely and voluntarily entered or else rely on a record established in a state habeas corpus hearing, which record is adequate under the provisions of 28 U.S.C.A. § 2254." 335 F. Supp. at 313.
*177 The Fifth Circuit agreed with this statement and said that if an evidentiary hearing, held after the plea was made, shows that the plea was voluntarily and intelligently made, then the proscriptions of Boykin are satisfied and the lack of a record at the time of the original plea is not fatal.
We are of the opinion that since Alexander and Boykin are not retroactive, the statement made in the presence of the court reporter to his attorney is sufficient to satisfy the requirement of our rules at the time the petitioner pleaded guilty.
The judgment of the trial court in refusing to grant a new trial on the petition for writ of error coram nobis is hereby affirmed.
Affirmed.
SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.