# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CT-01101-SCT

*SOWETO RONNELL LOVE a/k/a SOWETO LOVE*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2021 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM, SR. |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SOWETO RONNELL LOVE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 08/15/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. The Tate County Circuit Court accepted Soweto Ronnell Love's Petition to Enter Plea of Guilty to one count of attempting to acquire or obtain possession of a controlled substance by forged prescription and to one count of acquiring or obtaining a controlled substance by forged prescription. The circuit court's sentence provided that Love pled guilty to the two counts "as a [Mississippi Code Section] 99-19-81 Habitual Offender as charged in the Indictment . . . ." Love was consequently sentenced as a habitual offender under Section 99-19-81 to five years on each count on October 6, 2020, with the sentences to run consecutively.

¶2.     The following year, Love filed a pro se Motion for Post-Conviction Collateral Relief (PCR) and challenged the voluntariness of his guilty plea. The circuit court dismissed Love's PCR motion without an evidentiary hearing, however, finding that Love's plea was voluntary based on the record of his guilty plea.

¶3.     On appeal, a divided Court of Appeals (five-to-one-to-four) affirmed the circuit court's dismissal of Love's PCR motion.[1] *Love v. State*, No. 2021-CP-01101-COA, 2023 WL 4571317, at *6 (Miss. Ct. App. July 18, 2023). And on November 21, 2023, the Court of Appeals denied Love's pro se motion for rehearing. Love then filed a timely pro se petition for writ of certiorari, which this Court granted.

¶4.     Holding that the circuit court erred by dismissing Love's PCR motion on his voluntariness claim and that the Court of Appeals erred by affirming the dismissal, we reverse both the circuit court's dismissal of Love's PCR motion and the Court of Appeals' decision, and we remand this case to the circuit court for an evidentiary hearing to determine whether Love voluntarily pled guilty as a habitual offender.

## FACTS AND PROCEDURAL HISTORY

¶5.     A six-count[2] indictment was entered jointly against Love and Porcha Latoya Knox on

---

[1] Judge Greenlee authored the majority, joined by Chief Judge Barnes, Presiding Judge Carlton, and Judges Lawrence and Smith. Judge McDonald concurred in part and in the result without separate written opinion. Judge Emfinger dissented with separate written opinion, joined by Presiding Judge Wilson and Judges Westbrooks and McCarty. Judge McDonald joined that opinion in part.

[2] Count 1 alleged "Obtaining a Controlled Substance by Fraud"; Count 2 alleged attempting to acquire or obtain possession of a controlled substance by forged prescription; Counts 3 and 4 alleged acquiring or obtaining a controlled substance by forged prescription; and Counts 5 and 6 alleged possession of a forged prescription.

January 24, 2018.  Based on Love's seven prior felony convictions,[3] the State later moved to amend the indictment to charge him "as a[] habitual offender and as a recidivist according to [Mississippi Code] Section[s] 99-19-81 and . . . 41-29-147."  The circuit court then entered an order granting the State's motion on September 4, 2018.

¶6.     On August 29, 2019, Love, in the presence of counsel, signed a Petition to Enter Plea of Guilty to two of the original six counts: Count 2 (attempting to acquire or obtain possession of a controlled substance by forged prescription) and Count 3 (acquiring or obtaining a controlled substance by forged prescription).[4]  *See Love*, 2023 WL 4571317, at *1.  In the petition, Love acknowledged with his signature:

> 3.  I plead guilty to the charge(s) of Forged Prescription - 2 counts in violation of Miss. Code Ann. § 41-29-144, as set forth in count[s] 2, 3 of the indictment in this cause number.
>
> . . . .
>
> 9.  *My lawyer has informed me as to the maximum and minimum punishment which the law provides for the offense charged in the indictment.  The maximum punishment which the [c]ourt may impose for this crime that I am charged with is 5 years imprisonment [on each count] and $1,000.00 fine [on each count].  The minimum punishment is 1 years imprisonment [on each count] and/or $0 fine [on each count] . . . .*
>
> . . . .
>
> 11.  I do understand that no one can assure me of parole or early release.  Certain crimes make a Defendant ineligible for parole.  These include, but are

---

[3] The State listed the cause numbers for Love's seven prior felony convictions in its motion to amend the indictment.

[4] Count 2 allegedly occurred "between the 26th and 27th day of [October]" 2017 and Count 3 allegedly occurred on September 23, 2017.  The two charges therefore did not merge.

3

not limited to, sex crimes, armed robbery and defendants who are sentenced as habitual offenders. I have discussed with my attorney whether the crime for which I am charged fits into that category. I understand that this process is governed by the Legislature and the Mississippi Department of Corrections and not by this [c]ourt.

. . . .

17. I have not previously been convicted of any felony, except Possession with Intent [and] Possession of a Controlled Substance by Fraud.

. . . .

19. I understand that if [I] have now been convicted of two (2) or more felonies upon charges separately brought and arising out of separate incidents at different times and have been sentenced to separate terms of one (1) year or more in any state and/or Federal prison institution, that if I am convicted of another felony, then I may be sentenced to the maximum term of imprisonment prescribed or such felony and such sentence shall not be reduced or suspended nor will I be eligible for parole or probation or other earned or good time.

20. I understand that if [I] have now been convicted on two (2) or more felonies upon charges separately brought and arising out of separate incidents at different times and have been sentenced and served separate terms of one (1) year or more in any state and/or Federal prison institution and one of such felonies was a crime of violence, that if I am convicted of another felony, then I may be sentenced to life imprisonment and such sentence shall not be reduced or suspended nor will I be eligible for parole or probation or other earned or good time.

(Emphasis added.)

¶7. At the plea colloquy held on September 16, 2019, the circuit court and Love had the following exchange:

COURT:    This petition tells me that . . . you're offering to plead guilty to forged prescription, two counts, which is a felony; is that correct?

LOVE:     Yes, sir.

4

. . . .

COURT: *It looks like the maximum penalty that you could suffer for the charges that you're pleading to of forged prescription in Counts Two and Three is five years on each count and $1,000 on each count. The minimum punishment is one year on each count and zero fine on each count. Is that what you and [your counsel] have talked about?*

LOVE: Yes, sir.

. . . .

COURT: You need to understand that if you are sentenced to the Mississippi Department of Corrections for any term of years or days or months, whenever, you have no assurances of parole or early release. In other words, you may have to serve every day of whatever sentence I impose on you.

Now, my question to you is, Did anyone promise you that if you'd come up here today and plead guilty that you'd be able to go down there to the penitentiary and you'd get out early or you'd make parole, and you have relied on that in entering your plea here today?

LOVE: No, sir.

(Emphasis added.)

¶8. More than a year after the plea colloquy, the circuit court sentenced Love to five years on each count on October 6, 2020, with the sentences to run consecutively. It also ordered Love to pay, on each count, "a $1,000.00 fine, $200.00 to the District Attorney's Office, $100.00 to the Mississippi Crime Victims Compensation Fund and all costs of Court." Importantly, the circuit court's sentence claimed that Love had "pled guilty on September 16, 2019 . . . as a 99-19-81 Habitual offender as charged in the Indictment . . . ."

¶9. Love subsequently challenged his conviction by filing a pro se PCR motion in March

2021. In the motion, he argued that his guilty plea was involuntary, claiming that

> at the time that the plea hearing had been scheduled to take place but just prior to any waiver of [his] fundamental rights [he] had been allowed to go to the rest room. It was when he would return that he would learn that the court had actually proceeded with allowing his rights to be waived already and had found the pleas of guilty to be voluntarily entered on the record.

In addition to this claim, Love also (1) alleged "[t]hat the trial court failed to establish any factual basis to the offenses that [he was] convicted of"; (2) alleged that he was not "*informed of the maximum and minimum sentences of the offenses*"; and (3) requested that "an evidentiary hearing be scheduled to further discuss the relevant matters and other circumstances pertinent to the introduction of his plea(s) of guilty." (Emphasis added.)

¶10. On August 26, 2021, the circuit court entered a nine-page order dismissing Love's PCR motion. As in its sentence, the circuit court again claimed that Love had pled "as a Section 99-19-81 habitual offender." It also found that

> the transcript reflects that Love was present before [the circuit court] throughout his plea colloquy, that the State established a factual basis for the charges against Love, that [the circuit court] ascertained that Love understood the charges against him, what the consequences of his guilty plea were, including the constitutional rights that Love would be waiving by entering his plea, the minimum and maximum sentence that Love could receive for each charge that he was pleading guilty to, and that Love was informed that [the circuit court] would not be bound by any agreement that had been reached between the State and the Defense . . . .

Based on this finding, the circuit court held that Love had entered his plea voluntarily.

¶11. In response to the circuit court's dismissal, Love appealed, raising four issues. On appeal, the Court of Appeals addressed: (1) whether a "factual basis existed for [Love's] plea"; (2) whether Love's plea was voluntary; (3) whether "the circuit court erred by not

6

permitting [Love] to withdraw his plea"; and (4) whether Love "received ineffective assistance of counsel." *Love*, 2023 WL 4571317, at *3-6. On the first issue, the Court of Appeals held "that a factual basis was established to support Love's plea, and the circuit court did not err by dismissing Love's PCR motion on this claim." *Id.* at *3. On the second, the Court of Appeals held "that Love . . . failed to show that his guilty plea was involuntary" and "that the circuit court did not err by dismissing Love's PCR motion on this claim." *Id.* at *6. Judge Emfinger dissented on this issue, however, finding that "[n]either the petition to enter a plea of guilty nor the transcript of the guilty plea hearing shows that Love intended to enter his guilty pleas as a habitual offender." *Love*, 2023 WL 4571317, at *8 (Emfinger, J., dissenting). Judge Emfinger thus argued that Love is entitled to an evidentiary hearing to determine whether he pled voluntarily as a habitual offender. *Id.* at *8, *9. The Court of Appeals declined to address the third and fourth issues, holding that the third was "procedurally barred" and that the fourth did not warrant consideration since "Love did not present [it] to the circuit court in his PCR motion . . . ." *Id.* at *6.

¶12. In arguing the second issue on appeal, Love abandoned his earlier claim that he had been in the restroom when his guilty plea was entered. He instead claimed that "his plea was involuntary because he was 'told that he would not be charged as a habitual [offender]' and that he 'would [only be sentenced to] probation.'" *Id.* at *3 n.2 (alterations in original). Notwithstanding this change, however, the Court of Appeals went on to address the issue of voluntariness since "Love raised the issue of the voluntariness of his plea in his PCR motion, though in a different context, and the circuit court ultimately ruled on whether Love

7

understood the minimum and maximum sentences for each charge . . . ." *Id.* at \*3 (footnote omitted).

¶13.    Following the Court of Appeals' decision, Love filed a pro se motion for rehearing, which the Court of Appeals denied on November 21, 2023.  He then filed a timely petition for writ of certiorari on January 12, 2024, which this Court granted on March 7, 2024.  While Love's certiorari petition and his supplemental briefing make a number of textual arguments that cite both the United States and the Mississippi Constitutions, his ultimate contention on writ of certiorari is that the circuit court erred by dismissing his PCR motion since he did not voluntarily plead guilty as a habitual offender.

## STANDARD OF REVIEW

¶14.    "When reviewing a [circuit] court's denial or dismissal of a PCR motion, we will only disturb the [circuit] court's decision if it is clearly erroneous; however, we review the [circuit] court's legal conclusions under a de novo standard of review." *Hathorne v. State*, 376 So. 3d 1209, 1211 (Miss. 2023) (alterations in original) (internal quotation marks omitted) (quoting *Magee v. State*, 340 So. 3d 297, 300 (Miss. 2022)).

## DISCUSSION

1.      **Whether Love's plea was voluntary.**

¶15.    Regarding issue two before the Court of Appeals—whether Love's plea was voluntary—we first turn to Mississippi Rule of Criminal Procedure 15.3.  Rule 15.3(c) provides, in relevant part:

> **(c) Voluntariness.**  Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made . .

. . A plea is not voluntary if induced by fear, violence, deception, or improper inducements. *A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.*

MRCrP 15.3(c) (emphasis added). Further, Rule 15.3(d)(2) provides:

> **(d) Advice to the Defendant.** When the defendant is arraigned and wishes to plead guilty to a felony or a misdemeanor with the possibility of incarceration, the defendant may be placed under oath and *it is the duty of the trial court to address the defendant personally in open court to inquire and determine*:
>
> . . . .
>
> (2) *That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law . . . .*

MRCrP 15.3(d)(2) (emphasis added).

¶16. Returning to the present case, Love bore the burden "to prove his guilty plea was not voluntary." *Garcia v. State*, 369 So. 3d 511, 520 (Miss. 2023) (citing *Gardner v. State*, 531 So. 2d 805, 810 (Miss. 1988)). The Court of Appeals held that Love failed to meet his burden since he "[did] not prove[] that his plea was not voluntarily, intelligently and knowingly entered as a habitual offender." *Love*, 2023 WL 4571317, at *5. In support of its holding, the Court of Appeals emphasized that "[p]lain-error review can only be used for 'correcting obvious instances of injustice or misapplied law[,]'" and ultimately found neither to be present. *Id.* (internal quotation marks omitted) (quoting *Hollingsworth v. State*, 269 So. 3d 456, 459 (Miss. Ct. App. 2020)). We find instances of both misapplied law and injustice here, however. *See Smith v. State*, 986 So. 2d 290, 294 (Miss. 2008) ("Plain-error review is property utilized for 'correcting obvious instances of injustice or misapplied law.'" (quoting *Newport v. Fact Concerts*, 453 U.S. 247, 256, 101 S. Ct. 2748, 69 L. Ed. 2d 616

(1981)); "Under the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant's 'fundamental, substantive right.'" (citing ***Debrow v. State***, 972 So. 2d 550, 553-54 (Miss. 2007))).

### a. Misapplied Law

¶17.    The record reveals that the circuit court incorrectly informed Love of the minimum penalty he faced under Mississippi Code Section 99-19-81.  Prior to the July 1, 2018, amendment to the statute—which outlines the maximum and minimum penalties for habitual criminals—the statute read:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, *shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.*

Miss. Code Ann. § 99-19-81 (Rev. 2015) (emphasis added).  Following the amendment, which added one phrase, the statute read at the time of the plea colloquy and of sentencing:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony *unless the court provides an explanation in its sentencing order setting forth the cause for deviating from the maximum sentence*, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (Supp. 2018) (emphasis added).

10

¶18. Mississippi Code Section 99-19-1 clearly instructs which iteration of Section 99-19-81 dictated the minimum penalty Love faced. Section 99-19-1 read at the time of the plea colloquy and of the sentencing:

> No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; *and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them*, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.

Miss. Code Ann. § 99-19-1 (Rev. 2015) (emphasis added).

¶19. Applying Section 99-19-1 to the pre- and post-amendment iterations of Section 99-19-81, we hold that the pre-amendment iteration governed Love's maximum and minimum penalties since Love's alleged crimes were "committed under" that iteration. Miss. Code Ann. § 99-19-1. The circuit court was accordingly required to sentence Love to a minimum of five years on each count upon its acceptance of Love's pleading guilty as a habitual offender. Miss. Code Ann. § 99-19-81 (Rev. 2015). That the circuit court conducted the plea colloquy and sentenced Love after July 1, 2018, did not change this requirement. *See* Miss. Code Ann. § 99-19-1.

¶20. Despite Love facing a minimum penalty of five years, however, the circuit court informed him at the plea colloquy that the minimum penalty on each count was one year. This mistake was a clear misapplication of the law and amounted to plain error. *See **Harris v. State***, 527 So. 2d 647, 651 (Miss. 1988) ("If a defendant is a repeat offender falling within

11

the provisions of Miss. Code Ann. § 99-19-81 the trial judge has no alternative but to sentence him under said statute."). Further, considering Love's Petition to Enter Plea of Guilty contained the same misapplication, we find that Love was never informed of "the maximum and minimum penalties provided by law[,]" neither by his counsel nor by the circuit court, which resulted in a direct violation of Mississippi Rule of Criminal Procedure 15.3(d)(2). MRCrP 15.3(d)(2); *see generally Vittitoe v. State*, 556 So. 2d 1062, 1064 (Miss. 1990) (emphasizing that "the [c]ircuit [c]ourt did not advise Vittitoe of the mandatory minimum sentence, nor [was] there evidence that he knew of it from any other source").

¶21. Of course, Love cannot meet his burden by merely pointing out that he did not know the correct minimum penalty for each count. This Court has previously "applied the harmless error analysis by holding that where it can be said 'beyond a reasonable doubt that the failure to advise an accused of a minimum played no role in the decision of the accused to plead, such failure is not fatal to the sentence.'" *Simpson v. State*, 678 So. 2d 712, 715 (Miss. 1996) (quoting *Sykes v. State*, 624 So. 2d 500, 503 (Miss. 1993)); *see Gaskin v. State*, 618 So. 2d 103, 108 (Miss. 1993) (holding that counsel's informing Gaskin of the correct maximum and minimum penalties rendered the trial court's misinformation regarding the maximum sentence harmless). Further, "[a]utomatic invalidation of a guilty plea is not the rule in Mississippi." *Simpson*, 678 So. 2d at 715 (citing *Smith v. State*, 636 So. 2d 1220, 1226 (Miss. 1994)). We therefore inquire whether Love's being incorrectly advised of the minimum penalty for each count affected his pleading guilty as a habitual offender.

¶22. Reading the record through the lens of Mississippi Rules of Criminal Procedure

15.3(c) and (d)(2), we align with Judge Emfinger's dissent, which found that the record does not confirm that Love *knowingly* pled guilty as a habitual offender. *Love*, 2023 WL 4571317, at *8. While Love's acknowledgments in his Petition to Enter Plea of Guilty and in the plea colloquy reveal that Love was aware of the *standard concept* of being sentenced as a habitual offender, they in no way show that Love *knew that he* or *acknowledged that he* was pleading guilty as a habitual offender. They instead suggest that Love—who had no cause to believe the *possibility* of being sentenced as a habitual offender outlined in his Petition to Enter Plea of Guilty had morphed into reality—was unaware that he was pleading guilty as a habitual offender. Love indeed mentioned two prior felonies in his Petition—possession with intent and possession of a controlled substance by fraud—but his acknowledgment of these felonies does not amount to an acknowledgment that he was pleading guilty as a habitual offender. To say otherwise would suggest that Love's mere knowledge that he has prior felonies rendered him aware that he was pleading guilty as a habitual offender.

¶23.   The fact remains (1) that Love was misinformed regarding the minimum penalty he faced and (2) that the misinformation served only to mislead Love into thinking (a) that he was not pleading guilty as a habitual offender and (b) that he *could* receive a sentence as minute as one year on each count. Said another way, since habitual offenders face a minimum penalty of five years under Section 99-19-81, Love's being incorrectly advised that he was facing a minimum of one year for each count indicated to him nothing other than that he was pleading guilty *not as a habitual offender*. Further, the record reveals (1) that *neither*

13

*Love's counsel nor the circuit court* directly informed him that he was pleading guilty as a habitual offender, (2) that "the circuit court took no action of record to confirm that Love knew that the indictment had been amended to charge him as a habitual offender[,]" and (3) that Love never affirmed an intention to plead guilty as a habitual offender. *Love*, 2023 WL 4571317, at \*9. We can therefore only assume that Love was making his decision to plead guilty based on incorrect, inadequate, insufficient information from the outset. And we accordingly cannot say "beyond a reasonable doubt that the failure to advise [Love] of [the] minimum played no role in [his] decision . . . to plead . . . ." *Simpson*, 678 So. 2d at 715 (internal quotation marks omitted) (quoting *Sykes*, 624 So. 2d at 503). We can and do, however, hold that the circuit court erred by finding "that Love understood . . . the minimum and maximum sentence that [he] could receive for each charge that he was pleading guilty to . . . ."

### b. Injustice

¶24. *Joiner v. State*, 61 So. 3d 156 (Miss. 2011), offers insight into what the record lacks in this case. There, this Court considered the voluntariness of Albert Joiner's pleading guilty as a habitual offender under Section 99-19-81. Notably, "the indictment did not charge [Joiner] as a habitual offender." *Id.* at 157. But later, Joiner and the State entered into a plea agreement that Joiner would plead guilty "as a lesser habitual offender" under Section 99-19-81. *Id.* at 159. After being sentenced, Joiner "filed a motion for [PCR] . . . arguing that the trial judge had erred in sentencing him as a habitual offender . . . because the indictment failed to charge him as a habitual offender." *Id.* at 158.

14

¶25.    On writ of certiorari, the *Joiner* Court addressed the voluntariness of Joiner's plea, holding that the plea "waive[d] . . . [the] *defects or insufficiencies* in the indictment." *Id.* at 159 (internal quotation mark omitted) (quoting *Conerly v. State*, 607 So. 2d 1153, 1156 (Miss. 1992)).  Conclusive to the Court was the plea colloquy, which "reveal[ed] that Joiner was well aware that he was pleading as a habitual offender[.]"  *Id.*  In the colloquy, the circuit court asked Joiner three key questions: (1) "[T]he Court has before it a petition to enter a plea of guilty *as a lesser habitual offender* to the crime of strong armed robbery.  Is that correct?"; (2) "I have a petition to enter plea of guilty to the crime of felony fleeing of a law enforcement officer *as a lesser habitual offender*.  Is that also correct?"; and (3)

> [A]re you telling me that you realize and understand that you qualify for habitual offender status and that *you're going to be sentenced*, if the Court accepts your guilty plea, *as what we call a lesser habitual offender which will mean that the time that you receive you will have to serve day-for-day?*

*Id.*  Joiner responded, "Yes, sir[,]" to all three questions.  And for the *Joiner* Court, these affirmations were sufficient to find that "Joiner knowingly and voluntarily pleaded guilty . . . as a Section 99-19-81 habitual offender."  *Id.* at 159-60.

¶26.    Comparing Joiner's plea colloquy to Love's, the latter evinces a total absence of the direct questioning that the circuit court conducted in the former.  The only question posed by the circuit court in Love's colloquy that can even be construed as hinting to Love that he was pleading guilty as a habitual offender was:

> It looks like the maximum penalty that you could suffer for the charges that you're pleading to of forged prescription in Counts Two and Three is five years on each count and $1,000 on each count.  The minimum punishment is one year on each count and zero fine on each count.  Is that what you and [your counsel] have talked about?

15

Love indeed responded affirmatively, but again, this question did not inform Love that he was pleading as a habitual offender since (1) it makes no reference to Love pleading as a habitual offender, (2) it misapplies the relevant statutory minimum requirement, and (3) it misleads Love regarding (a) the nature of his plea and (b) the consequences of his plea.

¶27.    As the United States Supreme Court set forth in ***Boykin v. Alabama***, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), "a plea of guilty is more than an admission of conduct; it is a conviction." ***Id.*** at 242.  Further, "[w]hat is at stake for an accused facing . . . imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." ***Id.*** at 243-44; *see also **Alexander v. State***, 226 So. 2d 905, 910 (Miss. 1969).  Due to the incorrect information Love received regarding the minimum penalties he faced, we cannot say that Love pled guilty as a habitual offender with a "full understanding" of his plea's consequences, and we thus find blatant injustice here. ***Boykin***, 395 U.S. at 244.  The circuit court therefore erred when it found that "Love understood the charges against him, what the consequences of his guilty plea were, including the constitutional rights that [he] would be waiving by entering his plea, [and] the minimum and maximum sentence that [he] could receive for each charge that he was pleading guilty to . . . ."

        2.      **Whether a factual basis was established.**

¶28.    Regarding issue one before the Court of Appeals—whether a factual basis was established—we again turn to Mississippi Rule of Criminal Procedure 15.3(c).  Under the

16

Rule, "the [trial] court must determine . . . that there is a factual basis for [a guilty] plea." MRCrP 15.3(c). And it must make this determination "before [it] may accept a plea of guilty . . . ." *Id.* The elements of a sufficient factual basis are indeed flexible, and

> [w]hat facts must be shown depends on the crime and its assorted elements. . . . [B]ut what is ultimately required is "there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged."

***Burrough v. State***, 9 So. 3d 368, 373 (Miss. 2009) (citations omitted) (quoting ***Corley v. State***, 585 So. 2d 767, 767 (Miss. 1991)).

¶29. The factual basis that the State presented at the plea hearing was lengthy and notably detailed. We thus do not restate it here. *See **Love***, 2023 WL 4571317, at *3. Insofar as Count 2 and Count 3 are concerned, we align with the Court of Appeals' holding that the trial court was justified in finding a factual basis existed for Love's guilty plea. ***Id.*** The information presented by the State was certainly "enough that the [trial] court [could] say with confidence the prosecution could prove [Love] guilty of the crime[s] charged." ***Burrough***, 9 So. 3d at 373 (internal quotation mark omitted) (citing ***Corley***, 585 So. 2d at 767); *see also **Lott v. State***, 597 So. 2d 627, 628-31 (Miss. 1992) (holding a factual basis existed based on the record of the plea colloquy). But we find troubling the State's failure to mention any of Love's previous felony convictions when establishing its factual basis given that the State had amended the indictment to charge Love as a habitual offender. Without any mention of those convictions, we cannot hold that the State established "a factual basis to support the habitual offender portion of the indictment." ***Love***, 2023 WL 4571317, at *7. Further, we find that the State's failure to mention the convictions sows

17

further doubt as to whether Love voluntarily pled guilty as a habitual offender. That the State did not mention any of Love's prior felony convictions during the plea hearing only reinforces our previous conclusion that Love was making his decision to plead guilty based on incorrect, inadequate, insufficient information from the outset.

**3. Whether the circuit court erred by not permitting Love to withdraw his plea and whether Love received ineffective assistance of counsel.**

¶30. We agree with the Court of Appeals regarding issues three and four mentioned above. Love raised both issues for the first time on appeal, and we hold that the Court of Appeals correctly determined that they were procedurally barred. *See Love*, 2023 WL 4571317, at *6; *Parker v. Ross*, 367 So. 3d 151, 157 (Miss. 2023) ("[O]ne of the most fundamental and long established rules of law in Mississippi is that an appellate court will not review matters on appeal that were not raised at the trial court level." (internal quotation marks omitted) (quoting *Leverett v. Leverett*, 309 So. 3d 116, 121-22 (Miss. Ct. App. 2020))); *Stewart v. State*, 367 So. 3d 985, 987-88 (Miss. 2023) (holding that the issue was procedurally barred since it was raised "for the first time on appeal").

## CONCLUSION

¶31. We hold that Love met his burden by pointing to the considerable lack of accurate and direct information provided to him in the course of his pleading guilty as a habitual offender. Given that the record indicates that Love was misinformed of the minimum penalty he faced and that he was never made aware that he was pleading guilty as a habitual offender, we find that Love may not have voluntarily pled guilty as a habitual offender. We therefore reverse

18

both the circuit court's dismissal of Love's PCR motion and the Court of Appeals' decision, and we remand this case to the circuit court for an evidentiary hearing on whether Love voluntarily pled guilty as a habitual offender.

¶32.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**