Jeff KANDEL, individually and
on behalf of all others
similarly situated

v.

BROTHER INTERNATIONAL
CORPORATION, et al.;

David Lipper, individually and
on behalf of all others
similarly situated

v.

Brother International Corporation,
et al.

Nos. CV 08–1040–DSF(RCx),
CV 08–6126–DSF(RCx).

United States District Court,
C.D. California.

Feb. 1, 2010.

**1078**

Amber S. Healy, Mitch H. Kalcheim, Kalcheim Law Group PC, Beverly Hills, CA, James P. Bonner, Ralph M. Stone, Shalov Stone Bonner and Rocco LLP, New York, NY, Helen U. Kim, Kalcheim Law Group, Los Angeles, CA, for Jeff Kandel, David Lipper.

Karen Elizabeth Walter, Layne H. Melzer, Michelle Christina Hribar, Rutan & Tucker, Costa Mesa, CA, for Brother International Corporation, Brother Industries, Ltd.

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION FOR AN ORDER DECLARING 28 DOCUMENTS PRODUCED BY DEFENDANTS ARE NOT PRIVILEGED**

ROSALYN M. CHAPMAN, United States Magistrate Judge.

On November 24, 2009, plaintiffs, without filing a notice of motion and motion, filed a joint stipulation, the supporting declaration of Mitch Kalcheim with numerous exhibits and the opposing declarations of Charles Stadler and Layne Melzer with exhibits, and on December 2, 2009, plaintiffs filed a supplemental memorandum and the reply declaration of Mitch Kalcheim with exhibits and defendants filed their supplemental memorandum.[1] This matter is decided in Chambers without

---

1. Unredacted versions of these documents, except for defendants' supplemental memorandum, were subsequently filed under seal, and the Court has reviewed the sealed documents.

oral argument, pursuant to Local Rule 7–15.

## BACKGROUND

On December 18, 2007, plaintiff Jeff Kandel, proceeding individually and on behalf of all others similarly situated. filed a putative class action in Los Angeles County Superior Court against defendants Brother International Corporation ("BIC") and Brother Industries, Ltd. ("BIL"), challenging the design of defendants' toner cartridges and raising claims of unfair business practices under California Business & Professions ("B.P.C.") Code §§ 17200 et seq. and 17500 et seq. and violation of California Consumer Legal Remedies Act, Civil Code ("Civ. C") §§ 1750 et seq. On February 14, 2008, defendant BIC removed the action to this district court based on diversity of citizenship jurisdiction, and defendant BIC answered the complaint on February 22, 2008. However, plaintiff Kandel never served BIL. Declaration of Layne Melzer ("Melzer Decl.") ¶ 2. On November 4, 2008, plaintiff Kandel filed an amended complaint adding two new claims of trespass to chattels and contract, and on May 29, 2009, defendant BIC answered the amended complaint.

On September 17, 2008, plaintiff David Lipper, proceeding individually and on behalf of all others similarly situated, filed a putative class action against defendants BIC and BIL, also challenging the design of defendants' toner cartridges and asserting claims under B.P.C., Civ. C., trespass to chattels and contract similar to those raised by Kandel. On November 3, 2008, District Judge Dale S. Fischer granted plaintiffs' motion to consolidate the two actions, and defendants BIC and BIL answered the complaint on May 29, 2009.

On January 13, 2009, this Court entered a stipulated protective order, pursuant to Fed.R.Civ.P. 26(c), containing, in part, the following "claw back" provision: [2]

9. *Claims of Inadvertent Production*

(a) The inadvertent production of either attorney-client privileged material, Confidential Information or Restricted Information does not constitute a waiver of any privilege or right to claim the privileged or confidential status of the documents, materials, or information produced. In no event, however, shall any provision in this Protective Order be construed to alter the legal definition of "inadvertent," to reduce or diminish the standard or showing required to establish that production of materials that constitute Confidential Information or Restricted Information was truly inadvertent, or to provide protection from

---

**2.** This provision is based, in large part, on Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure, which provides:

If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present

the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Fed.R.Civ.P. 26(b)(5)(B); *see also* Federal Rule of Evidence 502(b) ("When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if: [¶] (1) the disclosure is inadvertent; [¶] (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and [¶] (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).").

disclosure as governed by applicable law.

(b) If a producing Party inadvertently produces attorney-client privileged material in this Action, the producing Party shall promptly make a good-faith representation that such production was inadvertent and take prompt remedial action to withdraw the disclosure. Within three (3) business days of receiving a written request to do so from the producing Party, the receiving Party must return, sequester, or destroy the specified information and any copies it has. Thereafter, the receiving Party must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the receiving Party disclosed it before being notified; and may promptly present the information to the Court under seal for a determination of the claim. The producing Party must preserve the information until the claim is resolved.

\* \* \*

(d) A Party that discovers it has received materials designated as or that appear by their plain terms to be subject to the attorney-client privilege or work product protection shall immediately follow the procedures outlined in *Rico v. Mitsubishi Motors Corp.*, (2007) 42 Cal.4th 807 [68 Cal.Rptr.3d 758, 171 P.3d 1092], including disclosing the materials to the producing Party and inquire whether the production of the materials was inadvertent. Within ten (10) calendar days of that disclosure, the producing Party must notify the receiving Party in writing whether the production was inadvertent. If the producing Party does not respond within ten (10) calendar days, the producing Party waives all attorney-client privilege or work product

protection with respect to the particular materials identified. During the ten (10) day period, counsel for the receiving Party shall retain all copies of the materials and shall not disclose, disseminate, analyze, reference or otherwise use the materials.

(e) Should the Parties be unable to agree upon the return of such documents and information because of a good faith argument that no privilege or work product protection is applicable, the Party asserting the privilege or work product protection shall have the burden of establishing the privilege or work product protection upon application to the Court or Magistrate [Judge]. If the document or information is returned to the producing Party or upon order of the Court, the production of the document or information shall not constitute a waiver of any privilege or work product protection as to the specific document or information.

(f) A Party objecting to an assertion of the attorney-client privilege or work product protection, nevertheless, shall comply with this Order herein pending resolution of the objection.

\* \* \*

(Docket Sheet no. 60).

## DISCUSSION

Rule 26(b)(1) permits discovery in civil actions of "any nonprivileged matter that is relevant to any party's claim or defense...." Fed.R.Civ.P. 26(b)(1). There is no dispute that Document nos. 12 and 14 through 40, which are the subject of the pending motion. Declaration of Mitch Kalcheim ("Kalcheim Decl.") ¶¶ 3, 9 & 13, Exhs. 2, 8, 12 & 14–40; Melzer Decl. ¶¶ 20–22, Exh. C, are relevant to plaintiffs' claims.[3] However, defendants assert they

---

**3.** These documents, which are collectively referred to by defendants as "the Stadler emails," are variations of stream emails to and from BIL employees, initially generated

are not discoverable by plaintiffs because they are subject to the attorney-client privilege and the work product doctrine as trial preparation material and they were inadvertently produced to plaintiffs within the meaning of paragraph 9 of the protective order and Rule 26(b)(5)(B). Thus, defendants oppose plaintiffs' motion and, instead, request plaintiffs "return, sequester, or destroy the [documents and] any copies...." Kalcheim Decl. ¶3, Exh. 2.

### 1. Attorney–Client Privilege:

 In a federal action such as this based on diversity of citizenship jurisdiction, state law governs attorney-client privilege claims. Fed.R.Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir. 1993); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D.Cal.1998). Under California law, "evidentiary privileges such as the attorney-client privilege are governed by statute." *HLC Props., Ltd. v. Superior Court*, 35 Cal.4th 54, 59, 24 Cal. Rptr.3d 199, 202, 105 P.3d 560 (2005); *Moeller v. Superior Court*, 16 Cal.4th 1124, 1129, 69 Cal.Rptr.2d 317, 320, 947 P.2d 279 (1997); *see also* California Evidence Code ("Cal. Evid. Code") § 911 ("Except as otherwise provided by statute: ... (b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing...."). More specifically, California Evidence Code §§ 950 et seq. provide for the "lawyer-client privilege," which attaches to

"confidential communication between client and lawyer" during the course of the attorney-client relationship.[4] Cal. Evid.Code § 952; *Moeller*, 16 Cal.4th at 1130, 69 Cal.Rptr.2d at 320, 947 P.2d 279; *Roberts v. City of Palmdale*, 5 Cal.4th 363, 371, 20 Cal.Rptr.2d 330, 333–34, 853 P.2d 496 (1993). "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar*, 54 Cal.3d 765, 779, 1 Cal.Rptr.2d 684, 691, 819 P.2d 424 (1991) (quoting Cal. Evid.Code § 952); *Roberts*, 5 Cal.4th at 371, 20 Cal.Rptr.2d at 334, 853 P.2d 496.

 "The client may assert the privilege and refuse to disclose confidential communications as long as the client is the holder of the privilege." *Moeller*, 16 Cal.4th at 1130, 69 Cal.Rptr.2d at 320, 947 P.2d 279 (citing Cal. Evid.Code § 954); *HLC Properties, Ltd.*, 35 Cal.4th at 60–61, 24 Cal.Rptr.3d at 203, 105 P.3d 560. The client is "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining a lawyer or securing legal service or advice from him in his professional capacity...." Cal. Evid.Code § 951; *see also Hyon v. Selten*, 152 Cal.App.4th 463, 469, 60 Cal. Rptr.3d 896, 901 (2007) ("By including 'authorized representative' in the definition of 'client,' the statute extends the [attorney-client] privilege to cover not only communications directly between the client and

by BIC employees Charles Stadler or Hector Jara. *See* Melzer Decl. ¶¶ 6–8.

4. The attorney-client privilege is grounded in public policy considerations and "is in furtherance of the proper and orderly functioning of our judicial system, which necessarily depends on the confidential relationship between the attorney and the client." *People v. Gionis*, 9 Cal.4th 1196, 1207, 40 Cal.Rptr.2d 456, 461–62, 892 P.2d 1199 (1995); *People v.*

*Velasquez*, 192 Cal.App.3d 319, 327, 237 Cal. Rptr. 366, 370 (1987). In enacting the attorney-client privilege, the California Legislature recognized " 'the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.'" *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 732, 101 Cal. Rptr.3d 758, 219 P.3d 736 (2009) (quoting *Mitchell v. Superior Court*, 37 Cal.3d 591, 600, 208 Cal.Rptr. 886, 890, 691 P.2d 642 (1984)).

the attorney but also communications between the client's agents and the attorney."). "A corporation is a person whose confidential communications with its attorney are protected by the attorney-client privilege." *Venture Law Group v. Superior Court,* 118 Cal.App.4th 96, 102, 12 Cal. Rptr.3d 656, 660 (2004) (citations omitted); *Costco Wholesale Corp.,* 47 Cal.4th at 733, 101 Cal.Rptr.3d at 764, 219 P.3d 736.

■ "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client relationship." *Costco Wholesale Corp.,* 47 Cal.4th at 733, 101 Cal.Rptr.3d at 764, 219 P.3d 736; *Venture Law Group,* 118 Cal.App.4th at 102, 12 Cal.Rptr.3d at 660. "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco Wholesale Corp.,* 47 Cal.4th at 733, 101 Cal.Rptr.3d at 764, 219 P.3d 736 (citing Cal. Evid.Code § 917(a); *Wellpoint Health Networks, Inc. v. Superior Court,* 59 Cal.App.4th 110, 123, 68 Cal.Rptr.2d 844, 852 (1997)).

■ Here, defendants' declarations establish the disputed documents are protected by the attorney-client privilege. These declarations establish the following relevant facts: Prior to the Rule 30(b)(6) deposition of Charles Stadler on December 11, 2008, defendants' counsel met with Mr. Stadler and Hector Jara, another BIC employee, to ask them "to gather" needed "information concerning certain technical aspects of Brother Brand Printers germane to the litigation and upcoming depositions." Melzer Decl. ¶ 6; Declaration of Charles Stadler ("Stadler Decl.") ¶ 3. During the meeting, Messrs. Stadler and Jara advised defendants' counsel that they "did not have any specific knowledge about the particular information needed by [counsel] and were not aware of anyone at BIC who could provide the information." *Ibid.* Rather, "this information could likely be obtained from specific persons at BIL." Melzer Decl. ¶ 6. Accordingly, defendants' counsel asked Messrs. Stadler and Jara "to gather the needed information from BIL ... [and,] [i]n this context, Mr. Stadler and Mr. Jara served as liaisons between [defendants' counsel] and employees of Defendants in gathering information needed by [counsel] in order to defendant Defendants." *Id.;* Stadler Decl. ¶ 3. "[Defendants' counsel] explained to Mr. Stadler and Mr. Jara exactly what information was needed by [counsel], and directed them to correspond with those persons at BIL who were necessary to provide them with the information [counsel] needed. [Defendants' counsel] explained to them that their communications with other BIC and BIL employees should be kept confidential, as they were attorney-client privileged communications and work product reflecting [counsel's] legal advice and strategy relating to the *Kandel/Lipper* litigation." Melzer Decl. ¶ 7; Stadler Decl. ¶ 3. Document nos. 12, 14–26 and 28–40 are documents reflecting Mr. Stadler's inquiries, which "were only sent to those persons reasonably necessary to gather the required information and assist in Defendants' defense[,]" and the information Mr. Stadler gathered in response to his inquiries. Stadler Decl. ¶ 4. Document nos. 27 and 40 consist of Mr. Jara's inquiries to BIL employees, and the information he gathered in response to those inquiries, which was then given to Mr. Stadler to provide to defendants' counsel. Stadler Decl. ¶ 6. Further, after Mr. Stadler's Rule 30(b)(6) deposition, defendants' counsel "directed Mr. Stadler to make follow up inquiries[,]" which are reflected in Docu-

ment nos. 14, 15 and 28. Melzer Decl. ¶ 8; Stadler Decl. ¶ 7.

■ Under California law, it is well recognized "that reports [by corporate employees] ... made solely for the purpose of preparing for the defense of [litigation] and that ... were required and made for confidential transmittal to [defendants'] counsel" are protected by the attorney-client privilege. *Rodriguez v. N. Am. Rockwell Corp.*, 28 Cal.App.3d 441, 448–49, 104 Cal.Rptr. 678 (1972) (citations omitted); *see also Zurich Am. Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 66 Cal. Rptr.3d 833 (2007) ("[I]n a corporate setting, the attorney-client privilege may extend to communications involving middle- and lower-level employees: ... 'In the corporate context, ... it will frequently be employees beyond the control group ...— officers and agents ... responsible for directing [the company's] actions in response to legal advice—who will possess the information needed by the corporation's lawyers. Middle-level—and indeed lower-level-employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.' ") (quoting *Upjohn Co. V. United States*, 449 U.S. 383, 391, 101 S.Ct. 677, 684, 66 L.Ed.2d 584 (1981) (some internal quotation marks omitted)); *D.I. Chadbourne, Inc. v. Superior Court of City & County of San Francisco*, 60 Cal.2d 723, 737, 36 Cal.Rptr. 468, 478, 388 P.2d 700 (1964) ("[A] communication does not lose its privilege merely because it was obtained, with the knowledge and consent of the employer, by an agent of the employer acting under such agency."). Thus, defendants have met their burden of establishing preliminary facts supporting their claim of attorney-client privilege, and the burden shifts to plain-

tiffs. *Costco Wholesale Corp.*, 47 Cal.4th at 733, 101 Cal.Rptr.3d at 764, 219 P.3d 736. However, plaintiffs have not met their burden to respond. The Court, thus, finds Document nos. 12 and 14 through 40 are protected by the attorney-client privilege.

### 2. Work Product Doctrine:

■ Unlike the attorney-client privilege, the application of the work product doctrine in diversity of citizenship cases is determined under federal law. *Frontier Refining, Inc. v. Gorman–Rupp, Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir.1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir.198). Under the work product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509–12, 67 S.Ct. 385, 392–94, 91 L.Ed. 451 (1947). One of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir.1992); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir.1989).

■ The work product doctrine establishes a qualified immunity, rather than a privilege, and the qualification of the immunity is to be determined upon a showing of necessity or good cause. *Admiral Ins. Co.*, 881 F.2d at 1494; *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 192 (C.D.Cal.2006); *see also United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) ("The privilege derived from the work-product doctrine is not absolute."). Like the attorney-client privilege, the party claiming work product immunity has the burden of proving the applicability of the doctrine. *A. Farber & Partners, Inc.*, 234

F.R.D. at 192; *In re Syncor ERISA Litig.,* 229 F.R.D. 636, 644 (C.D.Cal.2005).

▮▮▮▮ The defendants' declarations, discussed above, also establish that the disputed documents are trial preparation material or ordinary work product.[5] *See Nobles,* 422 U.S. at 238–39, 95 S.Ct. at 2170 ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." (footnote omitted)); *In re Grand Jury Subpoena,* 357 F.3d 900, 907 (9th Cir.2004) (same); *Board of Trustees of Leland Stanford Jr. Univ. v. Tyco Int'l Ltd.,* 253 F.R.D. 528, 530–31 (C.D.Cal. 2008) (work product doctrine protects opinion of corporation's employee, who reviewed documents and offered opinion at counsel's behest); *Coburn Group, LLC v. Whitecap Advisors, LLC,* 640 F.Supp.2d 1032, 1037 (N.D.Ill.2009) (e-mail from defendant's employee to defendant's principal sent after lawsuit was filed and providing information to defendant's principal to respond to defendant's attorney's request

for information is protected work product); *Strougo v. BEA Assocs.,* 199 F.R.D. 515, 522–23 (S.D.N.Y.2001) (document containing financial information prepared by company's employee at attorney's behest after litigation commenced was protected work product); *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.,* 2001 WL 1180694, *2 (D.Mass.2001) ("[T]he mental impressions, opinions, or litigation theory of a party's non-attorney employee may qualify as opinion work-product when the party's non-attorney employee is acting on the party's behalf." (citations omitted)). As ordinary work product, however, these documents may be discovered if they are relevant and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A)(i)-(ii). Here, plaintiffs have not met their burden under Rule 26(b)(3) to show "substantial need for the materials to prepare [their] case" and that they "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A)(ii). In fact, defendants provided plaintiffs with a summary chart of the factual information in the disputed documents prior to Mr. Stadler's Rule 30(b)(6) deposition to facilitate plaintiffs' ability to fully examined Mr. Stadler, Melzer Decl. ¶¶ 23–24, Exh. D, and plaintiffs did fully examine Mr. Stadler at his deposition.[6]

5. As the Eighth Circuit has noted:
There are two kinds of work product—ordinary work product and opinion work product. Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. *See* Fed.R.Civ.P. 26(b)(3). In contrast, opinion

work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.
*Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir.2000) (some citations omitted); *Holmgren,* 976 F.2d at 577.

6. Plaintiffs could have asked Mr. Stadler at the deposition to identify any documents he reviewed to prepare for the Rule 30(b)(6) de-

Kalcheim Decl. ¶ 15, Exh. 41. Thus, Document nos. 12 and 14 through 40 are subject to protection under the work product doctrine.

### 3. Inadvertent Production:

 Mr. Melzer's declaration establishes the following facts relevant to defendants' claim that the disputed documents were inadvertently produced to plaintiffs: Defendants provided their initial production of documents to plaintiffs on June 11, 2009, and by mid-August 2009, had "produced approximately 10,400 documents, or about 67,678 pages" to plaintiffs. Melzer Decl. ¶¶ 9–10, 13 & 18. Exhs. A–B. Since "most of BIL's records are written in Japanese," defendants' documents required both Japanese language review and review for privilege. Melzer Decl. ¶¶ 11, 14–15. "To assist with document review and collection, [defendants'] counsel hired a third party consultant[,] ... [who] scanned BIL's servers and archives and put documents into a database that could be reviewed." Melzer Decl. ¶ 12. "This process involved multiple extensive conferences between [defendants'] attorneys ..., the third-party consultant, [defendants' attorneys'] information technology staff, and software vendors." *Id.* Defendants' counsel "had to reconfigure portions of its computer systems with Japanese language support software in order to be able to open BIL's files." *Id.*

In connection with BIL's document production, defendants' counsel:

> provided its third[-]party consultant and document review team with a document review protocol that contained specific instructions on designating and setting aside documents that are attorney-client privileged or work product. As part of this document review protocol, [defen-

dants' counsel] provided its third[-]party consultant and document review team with a list of attorney and legal staff names so that communications to or from those persons could be electronically flagged as potentially privileged. [Defense counsel] also instructed the third-party consultant to run key work searches (e.g. attorney, litigation, etc.) that would assist in segregating privileged documents for review.

Melzer Decl. ¶ 16. In mid-August 2009, however, defendants' counsel "discovered that some privileged documents had been inadvertently produced." Melzer Decl. ¶¶ 17 & 19. Upon this discovery, defendants' counsel:

> immediately contacted its third-party consultant who confirmed that it did not run certain key word searches it was instructed to run by [counsel]. [Defendants' counsel] immediately instructed the third[-]party consultant to run additional electronic keyword searches of the documents that BIL had produced using broad search terms (e.g. privileged, attorney, litigation, etc.), so that [counsel] could isolate all documents that may have been inadvertently produced.

Melzer Decl. ¶ 19. This electronic search yielded approximately 722 potentially privileged documents, and, ultimately, defendants determined 110 allegedly privileged documents were inadvertently produced to plaintiff. *Id.*

On August 24, 2009, defendants sent plaintiffs a letter informing them of defendants' inadvertent production of 110 privileged documents (including the 28 documents that are the topic of the pending discovery dispute), identifying the documents by Bates numbers, and requesting plaintiffs comply with paragraph 9 of the Protective Order and Fed.R.Civ.P.

---

position, but plaintiffs have not shown this inquiry was made; thus, the Court need not address plaintiffs' speculation that Mr. Sta-

dler reviewed these documents before the deposition.

26(b)(5)(B) and promptly return, sequester, or destroy the documents, Kalcheim Decl. ¶ 3, Exh. 2; Melzer Decl. ¶ 20, and on August 30, 2009, defendants provided plaintiffs with a privilege log identifying the 110 documents. Kalcheim Decl. ¶¶ 9 & 13, Exhs. 8, 12 & 14–40; Melzer Decl. ¶ 21. Two of these 28 documents were marked either "Confidential: Created at the Request of Counsel" or "Attorney Client privileged communication (Laser Class Action Cases)." [7] Kalcheim Decl. ¶ 13, Exh. 14 at 121; Melzer Decl. ¶ 22, Exh. C.

These facts show defendants "took reasonable steps to prevent" the discovery of Document nos. 12 and 14 through 40 by plaintiffs and also "promptly took reasonable steps" to retrieve the privileged documents from plaintiffs. Thus, defendants have shown their production of privileged documents to plaintiffs was inadvertent within the meaning of paragraph 9 of the protective order, Fed.R.Civ.P. 26(b)(5)(B), and Fed.R.Evid. 502(b). *Coffeyville Resources Refining & Marketing v. Liberty Surplus Ins. Corp.*, 261 F.R.D. 586, 591 (D.Kan.2009); *Coburn Group, LLC*, 640 F.Supp.2d at 1041; *Miyano Machinery USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 461–62 (N.D.Ill.2008). For all these reasons, plaintiffs' motion should be denied.

## ORDER

Plaintiffs' motion for an order declaring 28 documents produced by defendants to be not privileged **IS DENIED,** and plaintiffs shall return Document nos. 12 and 14 through 40, and all copies thereof, to defendants, no later than five (5) days from the date of this Order.

---

7. Plaintiffs, however, did not notify defendants they had received documents marked either "Confidential" or "Privileged"; rather, on August 25, 2009, plaintiffs sent defendants "a list of documents that Plaintiffs intended to use in the upcoming depositions of BIL's witnesses[,][and][t]he list included thirteen of the

## MEMORANDUM

DALE S. FISCHER, District Judge.

**Proceedings:** (In Chambers) Order Overruling Plaintiffs' Objections to Magistrate's December 15, 2009 Order

The Honorable Rosalyn M. Chapman entered an order on December 15, 2009, finding that certain documents produced by Defendants were privileged under the attorney-client privilege and protected by the work product doctrine. Judge Chapman further ruled that Defendants' production of the documents was inadvertent. Plaintiffs have filed objections to this decision.

The documents at issue consist of numerous versions of an e-mail communication chain started by representatives of Brother International Corp. The communications consist of requests for certain technical information from individuals at Brother Industries, Ltd. and the responses from Brother Industries. Defendants have provided declarations from counsel and from one of the Brother International employees that started the e-mail chain, Charles Stadler. These declarations state that the inquiries were at the request of counsel for the purpose of preparing counsel in this litigation. Plaintiffs claim that the communications were used by Stadler to prepare for his Rule 30(b)(6) deposition and, therefore, are not privileged.

A district court's review of the decision of a magistrate judge is governed by 28 U.S.C. § 636(b)(1)(A) which provides:

Notwithstanding any provision of law to the contrary—a judge may designate a

documents" defendants had advised plaintiffs were inadvertently produced to them, including the two documents marked either "Confidential: Created at the Request of Counsel" or "Attorney Client privileged communication (Laser Class Action Cases)." Melzer Decl. ¶ 22.

magistrate [judge] to hear and determine any pretrial matter pending before the court . . . . A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate[ ] [judge's] order is clearly erroneous or contrary to law.

While Plaintiffs attempt to style the magistrate judge's order as "contrary to law," they do not identify any incorrect statement of law or incorrect application of the law. Instead, it is apparent that Plaintiffs object to the magistrate judge's factual findings (1) that the communications reflected in the documents were undertaken at the request of counsel, for the purposes of educating counsel, and not for the purposes of informing Stadler's deposition testimony and (2) that Defendants took reasonable steps to prevent the production of the privileged documents such that the production can be excused as inadvertent. These factual findings are subject to reversal only if they are clearly erroneous.

Plaintiffs have not demonstrated that the magistrate judge's findings were clearly erroneous. While the documents are not privileged on their face, Defendants produced declarations from Defendants' counsel and from Stadler indicating that the communications were undertaken at the request of counsel for the purpose of informing counsel and defending the litigation. Plaintiffs argue that the communications actually were initiated to prepare Stadler's deposition testimony or were otherwise used to prepare Stadler's testimony, but there is no evidence in the record to support this position other than the timing of some of the communications.[1]

The magistrate judge did not clearly err in making the only factual finding with substantial evidentiary support in the record. The magistrate judge also did not clearly err when she found that Defendants' document production management was reasonable enough to excuse the inadvertent production. Plaintiffs are correct that this was not a particularly large document production for this kind of case, but the production was obviously complicated by the fact that many or most of the documents were in Japanese and had to be obtained from Japan. Given these complexities and the document production procedures outlined by Defendants, it was not clear error to find that the production was inadvertent and excusable.

The objections to the magistrate judge's order are OVERRULED.

IT IS SO ORDERED.

---

1. See Magistrate Judge's Order at 11 n. 6 ("Plaintiffs could have asked Mr. Stadler at the deposition to identify any documents he reviewed to prepare for the Rule 30(b)(6) deposition, but plaintiffs have not shown this inquiry was made; thus, the Court need not address plaintiffs' speculation that Mr. Stadler reviewed these documents before the deposition.").