Serial: **232109**

# IN THE SUPREME COURT OF MISSISSIPPI

## No. 89-R-99002-SCT

*IN RE: MISSISSIPPI RULES OF*
*EVIDENCE*

**FILED**

JUN 18 2020

OFFICE OF THE CLERK
SUPREME COURT
COURT OF APPEALS

## EN BANC ORDER

Before the en banc Court is the Motion to Amend Certain Mississippi Rules of Evidence (Motion No. 2019-1929), filed by the Supreme Court of Mississippi's Advisory Committee on Rules.

The Committee proposes amending Rules 502, 803(6)–(8), 803(10), 803(16), 804(b)(3)(B), and 902(12)–(13) of the Mississippi Rules of Evidence. The motion was posted for comment from May 28, 2019, to June 27, 2019.

After due consideration, we find that the motion should be granted as set forth in the attached Exhibit A.

IT IS THEREFORE ORDERED that the Motion to Amend Certain Mississippi Rules of Evidence is granted as set forth in the attached Exhibit A. The amendments shall be effective on July 1, 2020.

IT IS FURTHER ORDERED that the Clerk of this Court must spread this order upon the minutes of the Court and send a certified copy to West Publishing Company for publication in the advance sheets of *Southern Reporter, Third Series (Mississippi Edition),*

and in the next edition of the *Mississippi Rules of Court*.

SO ORDERED, this the ___18___ day of June, 2020.

MICHAEL K. RANDOLPH,
CHIEF JUSTICE
FOR THE COURT


AGREE: RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ.

AGREE IN PART: KITCHENS AND KING, P.JJ.

## Rule 502. Lawyer-Client Privilege

**(a) Definitions.** In this rule:

**(1)** "Client" means a person, public officer, corporation, association, or any other public or private organization or entity:

    **(A)** to whom a lawyer renders professional legal services; or

    **(B)** who consults a lawyer with a view to obtaining professional legal services from the lawyer.

**(2)** "Client's representative" means:

    **(A)** one authorized to:

        **(i)** obtain professional legal services on behalf of the client; or

        **(ii)** act on behalf of the client on the legal advice rendered; or

    **(B)** an employee of the client with information the lawyer needs to render legal services to the client.

**(3)** "Lawyer" means a person authorized – or who the client reasonably believes is authorized – to practice law in any state or nation.

**(4)** "Lawyer's representative" means one employed by the lawyer to assist the lawyer in rendering professional legal services.

**(5)** A communication is "confidential" if not intended to be disclosed to third persons other than those:

    **(A)** to whom disclosure is made to further rendition of professional legal services to the client; or

    **(B)** reasonably necessary to transmit the communication.

**(6)** "Lawyer-client privilege" means the protection that applicable law provides for confidential lawyer-client communications.

**(7)** "Work-product protection" means the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial.

.     .     .

**(e) Limitations on Waiver.** The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the lawyer-client privilege or work-product protection.

    **(1)** *Disclosure Made in a Mississippi Proceeding; Scope of a Waiver.* When the disclosure is made in a Mississippi proceeding and waives the lawyer-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Mississippi proceeding only if:

        **(A)** the waiver is intentional;

        **(B)** the disclosed and undisclosed communications or information concern the same subject matter; and

**(C)** they ought in fairness to be considered together.
**(2)** *Inadvertent Disclosure.* When made in a Mississippi proceeding, the disclosure does not operate as a waiver in a Mississippi proceeding if:
**(A)** the disclosure is inadvertent;
**(B)** the holder of the privilege or protection took reasonable steps to prevent disclosure; and
**(C)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following MRCP 26(b)(6)(B)

[Restyled effective July 1, 2016; amended effective July 1, 2020.]

. . .

## Advisory Committee Note

The language of Rule 502 has been amended as part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.

Subdivision (a) defines pertinent terms: who is a lawyer, who is a client, who are their representatives. These definitions clarify Mississippi law. The only existing statute relating to attorney-client relationship is M.C.A. § 73-3-37 which, among other things, includes a provision that one of an attorney's duties is "to maintain inviolate the confidence and, at every peril to themselves, to preserve the secrets of their clients. . . ."

The term "client" includes individuals, corporations and associations, and governmental bodies. Mississippi decisional law is in accord with Rule 502(a)(1) in that the privilege protects communications between an attorney and one who consults him with a view towards retaining him, but who eventually decides not to employ him. *See Perkins v. Guy*, 55 Miss. 153 (1877). The services provided by the attorney must be legal services in order to be cloaked with the privilege. Services which are strictly business or personal do not enjoy the privilege. *See* McCormick, *Evidence*, 92. The Mississippi court has not recognized the privilege in those cases in which the attorney is merely a scrivener. *Rogers v. State*, 266 So. 2d 10 (Miss. 1972).

Rule 502(a)(2) defines representatives of a client. This takes on particular significance in regards to corporate clients. This group of employees who may be a client's representatives is larger than the "control group". The "control group" was formerly one of the leading tests for determining which corporate employees had the benefit of the privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981), in which the Supreme Court construed the language of the Federal Rules of Evidence as invalidating the control group test and so rejected it.

2

The definition of lawyer in Rule 502(a)(3) covers any person licensed to practice law in any state or nation. It includes persons who are not lawyers but whom the client reasonably believes are lawyers.

The definition of representative of the lawyer in Rule 502(a)(4) is broadly designed to include the lawyer's employees and assistants. It also includes experts that the lawyer has hired to assist in the preparation of the case. It does not extend to an expert employed to be a witness. This conforms to existing Mississippi practice. *Dictum* in *Wilburn v. Williams*, 193 Miss. 831, 11 So. 2d 306 (1943), indicated that the court might have followed such a definition if the issue was before it.

A communication which takes place in the presence of a third party is not confidential unless it complies with the statement in Rule 502(a)(5). If the third party does not fall within these categories in this subdivision, his presence deems the communication not to be confidential. *See Taylor v. State*, 285 So. 2d 172 (Miss. 1973); *Ferrel v. State*, 208 Miss. 539, 45 So. 2d 127 (1950).

The test for confidentiality is intent. Thus, a communication made in public cannot be considered confidential. Intent can be inferred from the particular circumstances.

Rule 502(a)(6) and (7) define "lawyer-client privilege" and "work-product protection," but make no attempt to alter the law on whether a communication or information is protected under the lawyer-client privilege or work-product protection as an initial matter. Subdivision (e) governs the scope of waiver and the effect of inadvertent disclosure.

Subdivision (b) is a statement of the rule. The rule is drafted in such a way as to prevent eavesdroppers from testifying about the privileged communication. *See* the Advisory Committee Notes to Deleted FRE 503 [which is identical to U.R.E. 502(b)].

The privilege extends to statements made in multiple party cases in which different lawyers represent clients who have common interests. Each client has a privilege as to his own statements. The FRE Advisory Committee Notes to Deleted Rule 503 state that the rule is inapplicable in situations where there is no common interest to be promoted by a joint consultation or where the parties meet on a purely adversary basis.

Subdivision (b) provides that the privilege includes lawyer to client communications as well as client to lawyer communications. *See Barnes v. State*, 460 So. 2d 126, 131 (Miss. 1984).

Subdivision (c) establishes that the privilege belongs to the client or his personal representative. *Barnes v. State*, 460 So. 2d 126, 131 (Miss. 1984). The lawyer's claim is

limited to one made on behalf of the client; he himself has no independent claim. *See United States v. Jones*, 517 F.2d 666 (5th Cir.1974).

Subdivision (d) excludes certain instances from the privilege. Rule 502(d)(1) does not extend the privilege to advice in aid of a future crime or fraud. The provision that the client knew or reasonably should have known of the criminal or fraudulent nature of the act is designed to protect the client who is mistakenly advised that a proposed action is lawful. *See* McCormick, *Evidence*, 75. Existing law in Mississippi on this point is unclear. Dicta in two 19th century cases suggest that the privilege did apply to protect statements regarding the client's motives in fraudulent schemes. *See Parkhurst v. McGraw*, 24 Miss. 134 (1852); *Lengsfield and Co. v. Richardson and May*, 52 Miss. 443 (1876). Additionally, the federal appellate court in *Hyde Construction Co. v. Koehring Co.*, 455 F.2d 337 (5th Cir. 1972), has determined that the Mississippi courts would allow the privilege when an attorney, acting as the client's alter ego, commits a tort or fraud. It is uncertain, if this is an accurate reflection of the scarce Mississippi law on the point, but clearly under Rule 502(d)(1) the privilege in such a case would not apply.

Rule 502(d)(2) permits no privilege when the adversaries in a case claim the privilege from the same deceased client. The general rule is that the privilege survives death and may be claimed by the deceased's representative. However, this rule makes no sense in some cases; for instance, in will contests when various parties claim to be the representative of the decedent. Only at the end of the litigation will the court have determined who is the deceased's successor, and until it has made that determination, neither party is entitled to invoke the privilege.

Rule 502(d)(3) permits the use of statements made between a lawyer and his client when a controversy later develops between them, such as in a dispute over attorney's fees or legal malpractice.

Rule 502(e) addresses two main issues. The first is the effect of certain disclosures of matters protected by the lawyer-client privilege or as work product. The second is the concern over otherwise unnecessary litigation costs incurred to protect against inadvertent waiver – especially in cases involving electronic discovery – that often bear no proportionality to what is at stake in the case. *See* S. Saltzburg, M. Martin, & D. Capra 1 *Federal Rules of Evidence Manual* § 502.02[1] (11th ed. 2016) ("[T]he common-law rules on waiver of privilege and work product were responsible for rising costs of discovery, especially discovery of electronic information. In complex litigation the lawyers spend significant amounts of time and effort to preserve privilege and work product by screening protected documents from discovery. . . . Moreover, an enormous amount of expense was being put into document production in order to protect against inadvertent disclosure of privileged information, because the producing party risked a ruling that even a mistaken disclosure can result in a subject matter waiver. [L]awyers' fear of waiver led to extravagant claims of privilege, i.e., privilege claims often covered

4

non-privileged material because lawyers were concerned about waiver if they underclaimed").

Rule 502(e)(1) provides that an *intentional* disclosure, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence. *See* Rule 502(e)(2). The language concerning subject matter waiver — "ought in fairness" — is taken from Rule 106, because the animating principle is the same. Under both rules, a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation. An *inadvertent* disclosure of protected information can *never* result in a subject matter waiver.

Under Rule 502(e)(2)(B), considerations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production. *See* Paul W. Grimm, Lisa Yurwit Bergstrom & Matthew P. Kraeuter, *Federal Rule of Evidence 502: Has It Lived Up to Its Potential?*, 17 Rich. J.L. & Tech. 8, ¶ 43 (2011) ("Determining whether reasonable precautions have been taken cannot be done in a vacuum, and considerations of how much is at stake in the litigation and the resources of the party that inadvertently produced the privileged or protected information are both appropriate and necessary . . . ."). A party that uses advanced analytical software applications and linguistic tools in screening for privilege and work product may effectively protect against a finding of waiver. *See Kandel v. Brother International Corp.*, 683 F.Supp.2d 1076 (C.D.Cal. 2010) (Party hired a consultant to scan its servers and archives and put documents into a database that could be reviewed. Counsel provided consultant and document review team with a protocol containing specific instructions on designating protected materials). *But see Peterson v. Bernardi*, 262 F.R.D. 424 (D.N.J. 2009) (party took minimal steps to protect against inadvertent disclosure, and general statement that a privilege review was done, without any supporting details, was entitled to little weight). The rule does *not* require the producing party to engage in a post-production review, as that would increase the cost of discovery and impose the very thing the rule seeks to avoid. But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.

Under Rule 502(e)(2)(C), a party must act promptly *and* reasonably once it discovers its mistaken disclosure. While a party is not required to check after production to determine whether a mistake has been made, it must seek the return of the material once the party is on notice of the error. *See* S. Saltzburg, M. Martin, & D. Capra 1 *Federal Rules of Evidence Manual* § 502.02[3][d] (11th ed. 2016) (An "innocent recipient of mistakenly disclosed confidential information could be put at a disadvantage if the disclosing party would sit on its right to get the information back. As time passes, the

recipient could be entering the information into its own databases, providing it to its own experts, using it to inform pleadings, and so on. As time passes, it gets more costly to unring the bell struck by mistakenly disclosed information.")

Rule 502(e)(4) enables the use of confidentiality orders to limit the costs of privilege review, especially important in cases involving electronic discovery. The rule contemplates enforcement of "claw-back" and "quick peek" arrangements as a way to avoid the excessive costs of pre-production review for privilege and work product. *See Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003). For an example of a Rule 502(e)(4) order, *see* S. Saltzburg, M. Martin, & D. Capra 1 *Federal Rules of Evidence Manual* § 502.02[3][g] (11th ed. 2016). A confidentiality order can cover intentional disclosures as well as mistaken ones. Under Rule 502(e)(5), an agreement on the effect of disclosure is binding only on the parties to the agreement; if incorporated into a court order under Rule 502(e)(4), it is binding in other proceedings as well.

["Advisory Committee Note" substituted for "Comment," effective June 16, 2016; amended July 1, 2016, to note restyling; amended effective July 1, 2020.]

.  .  .

## Rule 803. Exceptions to the Rule Against Hearsay – Regardless of Whether the Declarant Is Available as a Witness

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

.  .  .

**(6)** *Records of a Regularly Conducted Activity.* A record of an act, event, condition, opinion, or diagnosis if:
    **(A)** the record was made at or near the time by – or from information transmitted by – someone with knowledge;
    **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
    **(C)** making the record was a regular practice of that activity;
    **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11); and
    **(E)** neither the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness.

**(7)** *Absence of a Record of a Regularly Conducted Activity.* Evidence that a matter is not included in a record described in paragraph (6) if:

6

**(A)** the evidence is admitted to prove that the matter did not occur or exist;

**(B)** a record was regularly kept for a matter of that kind; and

**(C)** ~~neither~~ the <u>opponent does not show that the</u> possible source of the information ~~nor~~ <u>or</u> other circumstances indicate a lack of trustworthiness.

**(8)** *Public Records.* A record or statement of a public office if:

    **(A)** it sets out:

        **(i)** the office's activities;

        **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law enforcement personnel; or

        **(iii)** in a civil case or against the prosecution in a criminal case, factual findings from a legally authorized investigation; and

    **(B)** ~~neither~~ the <u>opponent does not show that the</u> source of information ~~nor~~ <u>or</u> other circumstances indicate a lack of trustworthiness.

. . .

**(10)** *Absence of a Public Record.* Testimony – or a certification under Rule 902 – that a diligent search failed to disclose a public record or statement if<u>:</u>

    <u>**(A)**</u> the testimony or certification is admitted to prove that<del>:</del>

        <u>**(i)**</u> the record or statement does not exist; or

        <u>**(ii)**</u> a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind<u>; and</u>

    <u>**(B)** in a criminal case, a prosecutor who intends to offer a certification provides written notice of that intent at least 14 days before trial, and the defendant does not object in writing within 7 days of receiving the notice — unless the court sets a different time for the notice or the objection.</u>

. . .

**(16)** *Statements in Ancient Documents.* A statement in a document that is at least 20 years old <u>that was prepared before January 1, 1998,</u> and whose authenticity is established.

. . .

[Restyled effective July 1, 2016<u>; amended effective July 1, 2020.</u>]

. . .

## Advisory Committee Note

. . .

**(6) Records of Regularly Conducted Activity.** Rule 803(6) is an expansion of the common law business records exception used in Mississippi. The records must be those of a regularly conducted business activity; however, the definition of business is broader than pre-rule practice in Mississippi permitted. It includes records of non-profit institutions and associations. It is important to note that the custodian as well as other qualified witnesses may testify. Thus, it is not necessary to call or to account for all participants who made the record.

However, the source of the material must be an informant with knowledge who is acting in the course of the regularly conducted activity. This is exemplified by the leading case of *Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930) which is still the applicable law today under the rule. That case held that a police report which contained information obtained from a bystander was inadmissible; the officer qualified as one acting in the regular course of a business, but the informant did not.

Rule 803(6) specifically includes diagnoses and opinions as proper subjects of admissible entries, as well as the traditionally admissible entries pertaining to acts, events and conditions. The rule calls for the exercise of judicial discretion if there is an indication of a lack of trustworthiness. This permits the court to take into account the motivation of the informant.

Rule 803(6) provides that if the proponent has established the stated requirements of the exception – regular business with regularly kept record, source with personal knowledge, record made timely, and foundation testimony or certification – then the burden is on the opponent to show a lack of trustworthiness. It is appropriate to impose the burden of proving untrustworthiness on the opponent, as the basic admissibility requirements tend to guarantee trustworthiness in the first place and thus suffice to establish a presumption that the record is reliable. "[B]y showing that the records regularly record regularly conducted activity, the proponent has made a sufficient showing that the records are trustworthy enough to be admissible. The proponent should not have to make an extra affirmative showing of trustworthiness." Saltzburg, Martin, & Capra, Federal Rules of Evidence Manual, vol. 4, § 803.02[7][g] (11th ed.) (2017).

The opponent, in meeting its burden, is not necessarily required to introduce affirmative evidence of untrustworthiness. For example, the opponent might argue that a record was prepared in anticipation of litigation and is favorable to the preparing party without needing to introduce evidence on the point. The Supreme Court has noted that the use of the term "'indicates' certainly imposes less of a burden than, say, 'requires' or 'necessitates.'" *Rowland v. California Men's Colony*, 506 U.S. 194, 200 (1993). A determination of untrustworthiness necessarily depends on the circumstances.

The reference to self-authentication under Rule 902(11) is to confirm that the predicate for records under this exception may be by affidavit in appropriate cases.

8

**(7) Absence of Entry in Records Kept in Accordance with the Provision of Paragraph (6).** A record's failure to mention a matter which would ordinarily be contained in it is admissible to prove the nonexistence of the matter. This is innovative in Mississippi. Traditional Mississippi courts have admitted evidence of the absence of matter in the record only in the cases of public records.

While it has been unclear whether the absence of information was even hearsay, some courts have treated it as such and have found no exception to apply. Rule 803(7) settles the question of admissibility by clearly making the absence factor an exception.

Rule 803(7) provides that if the proponent has established the stated requirements of the exception – set forth in Rule 803(6) – then the burden is on the opponent to show a lack of trustworthiness. Rule 803(7) thus maintains consistency with the trustworthiness clause of Rule 803(6).

**(8) Public Records and Reports.** Public records and reports have been admissible in evidence as an exception to the hearsay rule. Countless statutory provisions in Mississippi formerly provided for the admission of public records. Additionally, there was similar development in the common law. *Ludlow v. Arkwright-Boston Mfrs. Mut. Ins. Co.*, 317 So. 2d 47 (Miss 1975). Subparagraphs (A)(i) and (A)(ii) are similar to Mississippi practice. The rule makes no distinction between state and local records. Subparagraph (A)(iii) adds the new element to the exception as traditionally applied in Mississippi. Subparagraph (A)(iii) provides that some investigative reports may be treated as hearsay exceptions. To be admissible they must be factual findings made in an investigation which was conducted pursuant to lawful authority. Opinions and conclusions contained in such reports should be excluded.

The experience in other jurisdictions which have adopted an identical rule has been that judges are exercising great caution in admitting these reports. Often they are being excluded if based on hearsay or the opinions of those not involved in the preparation of the report. The rule expressly gives judges the discretion to exclude such reports.

Rule 803(8) provides that if the proponent has established the stated requirements of the exception – prepared by a public office and setting out information as specified in the Rule – then the burden is on the opponent to show a lack of trustworthiness. It is appropriate to impose the burden of proving untrustworthiness on the opponent, as the basic admissibility requirements tend to guarantee trustworthiness in the first place and thus suffice to establish a presumption that the record is reliable. *See* Saltzburg, Martin, & Capra, Federal Rules of Evidence Manual, vol. 4, § 803.02[9][a] (11th ed.) (2017) ("Because of the strong presumption of reliability accorded to public reports, the burden of proving untrustworthiness is borne by the party seeking exclusion."); *Ellis v.*

*International Playtex, Inc.*, 745 F.2d 292, 301 (4th Cir. 1984) (Public records rightly carry a presumption of reliability, hence it is up to the opponent to "demonstrate why a time-tested and carefully considered presumption is not appropriate."). Rule 803(8) thus maintains consistency with the trustworthiness clause of rule 803(6).

The opponent, in meeting its burden, is not necessarily required to introduce affirmative evidence of untrustworthiness. For example, the opponent might argue that a record was prepared in anticipation of litigation and is favorable to the preparing party without needing to introduce evidence on the point. The Supreme Court has noted that the use of the term "'indicates' certainly imposes less of a burden than, say, 'requires' or 'necessitates.'" *Rowland v. California Men's Colony*, 506 U.S. 194, 200 (1993). A determination of untrustworthiness necessarily depends on the circumstances.

Even when admissible, public records under Subparagraph (A)(iii) may only be used in civil cases and in criminal cases on behalf of a defendant against the state. To permit the state to use such reports against a defendant would be to create confrontation rights problems.

.   .   .

**(10) Absence of Public Record or Entry.** ~~Rule 803(10) is also similar to pre-rule Mississippi law. *See, e.g.*, M.C.A. § 13-1-83 (repealed effective July 1, 1991). While the Mississippi statute formerly provided for evidence in the form of a certification, Rule 803(10) gives the possibility of a second form, i.e., oral testimony of the search.~~

Rule 803(10) permits proof by oral testimony or a certificate. For criminal cases, subparagraph (B) encompasses the requirements of *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), by incorporating an approved notice and demand procedure. *See also Conners v. State*, 92 So.3d 676 (Miss. 2012). The *Melendez-Diaz* Court declared that, consistent with the Confrontation Clause, the prosecutor may introduce a testimonial certificate against an accused who is given advance notice and does not timely demand the presence of the official who prepared the certificate.

.   .   .

**(16) Statements in Ancient Documents.** The ancient documents rule is a traditionally recognized exception in Mississippi. ~~Under this rule the common-law period of time is reduced to a minimum of twenty years.~~ The exception is limited to statements in documents prepared before January 1, 1998, due to the risk that the exception could otherwise be used as a vehicle to admit vast amounts of unreliable electronically stored information (ESI). Given the exponential development and growth of electronic information since 1998, the hearsay exception for ancient documents had become a

10

possible open door for large amounts of unreliable ESI, as no showing of reliability needs to be made to qualify under the exception.

In certain cases – such as cases involving latent diseases and environmental damage – parties must rely on hardcopy documents from the past. The ancient documents exception remains available in such cases for documents prepared before 1998. The need to admit old hardcopy documents produced after January 1, 1998, should decrease, because reliable ESI is likely to be available and can be offered under a reliability-based hearsay exception. Rule 803(6) may be used for many of these ESI documents, especially given its flexible standards on which witnesses might be qualified to provide an adequate foundation. And Rule 803(24) can be used to admit old documents upon a showing of reliability – which will often (though not always) be found by circumstances such as that the document was prepared with no litigation motive in mind, close in time to the relevant events. The limitation of the ancient documents exception is not intended to raise an inference that 20-year-old documents are, as a class, unreliable, or that they should somehow not qualify for admissibility under Rule 803(24). Finally, many old documents can be admitted for the non-hearsay purpose of proving notice, or as party-opponent statements.

The limitation of the ancient documents hearsay exception is not intended to have any effect on authentication of ancient documents. The possibility of authenticating an old document under Rule 901(b)(8) – or under any ground available for any other document – remains unchanged.

A party will often offer hardcopy that is derived from ESI. A good deal of old information in hardcopy has been digitized or will be so in the future. Under Rule 803(16), a document is "prepared" when the statement proffered was recorded in that document. For example, if a hardcopy document is prepared in 1995, and a party seeks to admit a scanned copy of that document, the date of preparation is 1995 even though the scan was made long after that – the subsequent scan does not alter the document. The relevant point is the date on which the information is recorded, not when the information is prepared for trial. However, if the content of the document is *itself* altered after the cut-off date, then the hearsay exception would not apply to statements that were added in the alteration.

.   .   .

[Amended July 1, 2009; "Advisory Committee Note" substituted for "Comment," effective June 16, 2016; amended July 1, 2016, to note restyling; amended effective July 1, 2020.]

11

**Rule 804. Exceptions to the Rule Against Hearsay – When the Declarant Is Unavailable as a Witness**

. . .

**(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

. . .

> **(3)** *Statement Against Interest.* A statement that:
> **(A)** a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
> **(B)** is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability and is offered to exculpate the accused.

. . .

## Advisory Committee Note

. . .

**(b)(3)** *Statement Against Interest.* Rule 804(b)(3) expands the common law exception of declaration against interest. Traditionally, courts have recognized two declarations against interest, pecuniary and proprietary. The rule extends the exception to declarations against penal interest on the theory that such declarations are reliable. No reasonable person would make such a statement and invite possible criminal prosecution if the statement were not true.

Subparagraph (b)(3)(B) is concerned with hearsay which inculpates the declarant but exculpates the criminal defendant. Unless such a statement can be corroborated as reliable, it will be excluded. provides that the corroborating circumstances requirement applies to all declarations against penal interest offered in criminal cases. A unitary approach to declarations against penal interest assures both the prosecution and the accused that the Rule will not be abused and that only reliable hearsay statements will be admitted under the exception. The Rules does not address the use of the corroborating circumstances for declarations against penal interest offered in civil cases.

12

In assessing whether corroborating circumstances exist, the credibility of the witness who relates the statement is not a proper factor for the court to consider in assessing corroborating circumstances. To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses.

. . .

[Amended effective July 1, 2009, to update citations and add subsection (b)(6); amended effective December 1, 2015, to update subsection (a)(5); "Advisory Committee Note" substituted for "Comment," effective June 16, 2016; amended July 1, 2016, to note restyling; amended effective July 1, 2020.]

. . .

### Rule 902. Evidence That Is Self-Authenticating
The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

. . .

**(12) Certified Records Generated by an Electronic Process or System.** A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification and notice requirements of Rule 902(11).

**(13) Certified Data Copied from an Electronic Device, Storage Medium, or File.** Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification and notice requirements of Rule 902(11).

[Restyled effective July 1, 2016; amended effective July 1, 2020.]

**Advisory Committee Historical Note**

. . .

**Advisory Committee Note**

**(12) Certified Records Generated by an Electronic Process or System.** Rule 902(12) sets forth a procedure by which parties can authenticate certain electronic evidence other than through the testimony of a foundation witness. As with the provisions on business records in Rules 902(11), the expense and inconvenience of producing a witness to authenticate an item of electronic evidence is often unnecessary. It is often the case that a party goes to the expense of producing an authentication witness, and then the adversary either stipulates authenticity before the witness is called or fails to challenge the authentication testimony once it is presented. Rule 902(12) provides a procedure under which the parties can determine in advance of trial whether a real challenge to authenticity will be made, and can then plan accordingly.

Nothing in Rule 902(12) limits a party from establishing authenticity of electronic evidence on any ground provided in these Rules, including through judicial notice where appropriate.

A proponent establishing authenticity under this Rule must present a certification containing information that would be sufficient to establish authenticity were that information provided by a witness at trial. If the certification provides information that would be insufficient to authenticate the record if the certifying person testified, then authenticity is not established under this Rule. The Rule specifically allows the authenticity foundation that satisfies Rule 901(b)(9) to be established by a certification rather than the testimony of a live witness.

The reference to the "certification requirements of Rule 902(11)" is only to the procedural requirements for a valid certification. There is no intent to require, or permit, a certification under this Rule to prove the requirements of Rule 803(6). Rule 902(12) is solely limited to authentication, and any attempt to satisfy a hearsay exception must be made independently.

A certification under this Rule can establish only that the proffered item has satisfied the admissibility requirements for authenticity. The opponent remains free to object to admissibility of the proffered item on other grounds – including hearsay, relevance, or in criminal cases the right to confrontation. For example, assume that a plaintiff in a defamation case offers what purports to be a printout of a webpage on which a defamatory statement was made. Plaintiff offers a certification under this Rule in which a qualified person describes the process by which the webpage was retrieved. Even if that certification sufficiently establishes that the webpage is authentic, defendant remains free to object that the statement on the webpage was not placed there by defendant. Similarly, a certification authenticating a computer output, such as a spreadsheet, does not preclude an objection that the information produced is unreliable – the authentication establishes only that the output came from the computer.

14

A challenge to the authenticity of electronic evidence may require technical information about the system or process at issue, including possibly retaining a forensic technical expert. Such factors will affect whether the opponent has a fair opportunity to challenge the evidence given the notice provided.

**(13) Certified Data Copied from an Electronic Device, Storage Medium, or File.** Rule 902(13) sets forth a procedure by which parties can authenticate data copied from an electronic device, storage medium, or an electronic file, other than through the testimony of a foundation witness. As with the provisions on business records in Rules 902(11), the expense and inconvenience of producing an authenticating witness for this evidence is often unnecessary. It is often the case that a party goes to the expense of producing an authentication witness, and then the adversary either stipulates authenticity before the witness is called or fails to challenge the authentication testimony once it is presented. The amendment provides a procedure in which the parties can determine in advance of trial whether a real challenge to authenticity will be made, and can then plan accordingly.

Nothing in Rule 902(13) limits a party from establishing authenticity of electronic evidence on any ground provided in these Rules, including through judicial notice where appropriate.

Today, data copied from electronic devices, storage media, and electronic files are ordinarily authenticated by "hash value." A hash value is a number that is often represented as a sequence of characters and is produced by an algorithm based upon the digital contents of a drive, medium, or file. If the hash values for the original and copy are different, then the copy is not identical to the original. If the hash values for the original and copy are the same, it is highly improbable that the original and copy are not identical. Thus, identical hash values for the original and copy reliably attest to the fact that they are exact duplicates. This amendment allows self-authentication by a certification of a qualified person that the person checked the hash value of the proffered item and that it was identical to the original. The rule is flexible enough to allow certifications through processes other than comparison of hash value, including by other reliable means of identification provided by future technology.

A proponent establishing authenticity under this Rule must present a certification containing information that would be sufficient to establish authenticity were that information provided by a witness at trial. If the certification provides information that would be insufficient to authenticate the record if the certifying person testified, then authenticity is not established under this Rule.

The reference to the "certification requirements of Rule 902(11)" is only to the procedural requirements for a valid certification. There is no intent to require, or permit, a

15

certification under this Rule to prove the requirements of Rule 803(6). Rule 902(13) is solely limited to authentication, and any attempt to satisfy a hearsay exception must be made independently.

A certification under this Rule can only establish that the proffered item is authentic. The opponent remains free to object to admissibility of the proffered item on other grounds – including hearsay, relevance, or in criminal cases the right to confrontation. For example, in a criminal case in which data copied from a hard drive is proffered, the defendant can still challenge hearsay found in the hard drive, and can still challenge whether the information on the hard drive was placed there by the defendant.

A challenge to the authenticity of electronic evidence may require technical information about the system or process at issue, including possibly retaining a forensic technical expert. Such factors will affect whether the opponent has a fair opportunity to challenge the evidence given the notice provided

["Advisory Committee Note" substituted for "Comment," effective June 16, 2016; amended July 1, 2016, to note restyling; amended effective July 1, 2020.]